## STATE OF CONNECTICUT *v.* ROBERT DUCATT
### (7981)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 5, 1989—decision released June 19, 1990

*Brian M. O'Connell,* with whom, on the brief, was *Steven F. Meo,* for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John A. O'Reilly, Jr.,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, after a jury trial, of operation of a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a (a). He claims that the trial court should have granted his motion for a judgment of acquittal and failed to instruct the jury properly on the meaning of the term "operate" as it is used in § 14-227a (a). We affirm the trial court's judgment.

The jury could reasonably have found the following facts. On September 21, 1988, at approximately 11:30 p.m., Officer William LaDuke of the Canton police department was on routine patrol when he noticed a car idling in the middle of the parking lot of a furniture store, with its headlights and brake lights lit. Investigating further, LaDuke found the defendant sitting in the driver's seat, slumped over and unconscious. The defendant had one hand draped over the steering wheel and the other "curled around the base of" the gearshift. On his fourth attempt, LaDuke succeeded in awakening the defendant to the point that he was able, with difficulty, to produce his driver's license. LaDuke arrested the defendant after he failed to execute several field sobriety tests. Breath alcohol tests administered at 12:34 a.m. and 1:07 a.m. yielded results of .120 and .119 respectively.

After the state presented its case at trial, the defendant moved for judgment of acquittal on the ground that insufficient evidence existed to establish that the defendant operated the vehicle in which he was found.

The court denied the motion and the defendant subsequently appealed, challenging both the denial of the motion for judgment of acquittal and the court's instruction on the meaning of the term "operate."

The dispositive issue in both claims is what constitutes operation within the meaning of § 14-227a (a).[1] The statute provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the [aforementioned] offense . . . if he operates a motor vehicle on a public highway . . . or in any parking area for ten or more cars . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight." Nothing else in the statute clarifies the meaning of "operate." In fact, the use of the term throughout the other sections of Chapter 248, General Statutes §§ 14-212 through 14-296b inclusive, is ambiguous, and makes no clear distinction between "driving" and "operating" a motor vehicle.

Our Supreme Court established such a distinction, however, when it approved the following jury instruction in *State* v. *Swift,* 125 Conn. 399, 402–403, 6 A.2d 359 (1939): "[T]he statute [in question] refers to persons who shall operate a motor vehicle, and is not confined to persons who shall drive a motor vehicle. A person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion

---

[1] The defendant presented evidence on his own behalf after the trial court denied his motion for judgment of acquittal. We need not determine whether the defendant's presentation of evidence constituted a waiver of his challenge to the denial of the motion for judgment of acquittal; *State* v. *Rutan,* 194 Conn. 438, 440–44, 479 A.2d 1209 (1984); because the same issue controls both this claim and the defendant's claim concerning the court's instructions.

the motive power of the vehicle. So if you find that the accused, while under the influence of intoxicating liquor, got into the automobile, while it was standing [at the] side of the street, and manipulated the machinery of the motor for the purpose of putting the automobile into motion, the accused being in the car and in a position to control its movements, the accused would be guilty of operating a car under the influence of intoxicating liquor, whether the automobile moved or not.''

This passage has become the standard jury instruction on operation in Connecticut and was included in the instructions of the trial court in this case. The distinction established in *Swift* between driving and operating has not been questioned in subsequent cases.[2]

The defendant contends that the portion of the *Swift* instruction that reads ''manipulated the . . . motor *for the purpose of putting the automobile into motion*'' (emphasis added) requires the jury to find that the defendant intended to move the vehicle. The trial court disagreed and refused to so instruct the jury.

The passage from *Swift* is ambiguous concerning the intent needed to constitute operation. The sentence

___

[2] The defendant cites *Davey* v. *Pepperidge Farms, Inc.*, 180 Conn. 469, 472 n.1, 429 A.2d 943 (1980), for the proposition that ''operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle.'' That case is inapposite; the issue in *Davey* was whether the negligent manipulation of a winch on the back of a truck, the controls for which were also at the back of the truck, constituted ''operation'' of the vehicle within the meaning of General Statutes § 31-293a, a section of the Workers' Compensation Act. More important, the discussion of operation in *Davey* does not conflict with that in *State* v. *Swift*, 125 Conn. 399, 6 A.2d 359 (1939), and does not support the defendant's contention. The *Davey* court was concerned not with equating operating with driving, but with limiting the definition of operation to the use of those mechanical or electrical devices that are ''integral part[s] of the motor vehicle.'' *Davey* v. *Pepperidge Farms, Inc.*, supra.

quoted by the defendant suggests that the defendant must intend to move the vehicle. The previous sentence, however, explicitly defines operation to occur when an intoxicated person in the vehicle "intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." Here, the requisite intent is not to *drive* the vehicle but merely, for instance, to engage the ignition or manipulate the gearshift or release the parking brake.

To resolve this ambiguity, we first consider the statute itself. "In order to ascertain and give effect to the apparent intent of the legislature, we must examine the language of the statute in light of the purpose that it was designed to achieve. *Mahoney* v. *Lensink,* 213 Conn. 548, 563, 569 A.2d 518 (1990)." *Szudora* v. *Fairfield,* 214 Conn. 552, 557, 573 A.2d 1 (1990). The purpose of the statute is manifest: to prevent the operation of motor vehicles by persons who, because of alcohol or drug intoxication, are deemed incapable of operating a vehicle responsibly. The statute does not specify or suggest that an intent to move the vehicle is an element of the offense. To require proof of such an intent, moreover, would frustrate the purpose of the statute.

That a severely intoxicated person does not *intend* to move a motor vehicle the engine of which he has started provides no assurance that the vehicle will in fact remain stationary. The possibility, moreover, that an intoxicated motorist might evade liability under § 14-227a (a) because his intoxication precluded him from intending to drive the vehicle would make a mockery of the legislature's purpose in enacting the statute. Whether intent "is or is not to be implied in the definition of a statutory crime, where it is not expressed, must be determined from the general scope of the Act, and from the nature of the evils to be avoided. See *State* v. *Nussenholz,* 76 Conn. 92, 96, 55

A. 589 (1903)." *State* v. *Gaetano,* 96 Conn. 306, 316, 114 A. 82 (1921). It is idle to suggest that a significant difference exists between a drunken motorist who starts the motor of his car with the intent of moving the car, and a drunken motorist who starts his car with no such intent. In either case, the controls of a car capable of immediate powered movement are under the control of an intoxicated motorist, which is precisely the evil the legislature sought to avoid through § 14-227a (a). We conclude, therefore, that the statute does not require the state to prove that the defendant intended to move the vehicle in order to prove operation under § 14-227a (a).

An accused operates a motor vehicle within the meaning of General Statutes § 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not. See *State* v. *Swift,* supra. The trial court correctly refused to instruct the jury that it had to find that the defendant had intended to move the vehicle.

The judgment is affirmed.

In this opinion the other judges concurred.