INDY SENGCHANTHONG *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 26105)

DiPentima, Harper and Dupont, Js.

Argued September 23—officially released November 22, 2005

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Steven A. Tomeo,* for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, the commissioner of motor vehicles, appeals from the trial court's judgment sustaining the appeal by the plaintiff, Indy Sengchanthong, from the order issued by a hearing officer of the department of motor vehicles, suspending the plaintiff's operator's license for ninety days pursuant to General Statutes § 14-227b.[1] The defendant claims that the court

[1] General Statutes § 14-227b provides in relevant part: "(c) If the person arrested . . . submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period. The police officer shall prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. . . . The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both and shall state that such person . . . submitted to such test or analysis, commenced within two hours of the time of operation, and the

improperly held (1) that the hearing officer's finding that the plaintiff operated a motor vehicle is not supported by the record and (2) that it was not clear whether the blood alcohol content test given to the plaintiff was timely taken.[2] We affirm the judgment of the trial court.

The following facts are pertinent to our resolution of the defendant's appeal. On May 30, 2004, at approximately 3:20 a.m., Officer Mark J. Comeau of the East Lyme police department, while traveling southbound on Interstate 95 in his police cruiser, observed a motor vehicle parked on the shoulder of Interstate 95 northbound between exits 72 and 73. While investigating the motor vehicle, Comeau made the following observations. The vehicle's left turn signal was flashing. Although rain was not falling, the windshield wipers were operating. The plaintiff was reclined in the driver's seat. Comeau flashed a spotlight at both the front and rear of the vehicle, but the plaintiff did not respond. Comeau drove his police cruiser behind the vehicle.

As Comeau approached the plaintiff's vehicle, he could hear the heater blower motor running. Comeau

results of such test or analysis indicated that such person had an elevated blood alcohol content. . . .

"(e) (1) Except as provided in subdivision (2) of this subsection, upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license . . . of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of such person's arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subdivision shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice."

[2] In view of our conclusion that the plaintiff was not operating a motor vehicle at the time of his arrest, we need not address the defendant's second claim.

also observed that "the [car] key . . . was in the ignition and was turned to the 'on' position."[3] Comeau knocked on the driver's window and did not get an immediate response. After knocking very hard on the driver's window, Comeau roused the plaintiff. While speaking with the plaintiff, Comeau smelled a strong odor of alcohol inside the vehicle and on the plaintiff's breath. The plaintiff also had glassy, bloodshot eyes. The plaintiff was the sole occupant of the vehicle and appeared to be disoriented, as well as intoxicated. When asked where he had been driving, the plaintiff stated that he started out driving in New Britain and was headed to Manchester via Interstate 84. He then argued that he was on Interstate 84 instead of Interstate 95. The plaintiff informed Comeau that he had consumed one beer prior to starting his trip home at 9 p.m. Comeau asked the plaintiff to exit his vehicle. Comeau then administered a standard battery of field sobriety tests. Due to the plaintiff's poor performance of the tests, Comeau placed him under arrest on a charge of operating a motor vehicle while under the influence of intoxicating liquor.

Comeau transported the plaintiff to police headquarters, apprised him of the mandatory alcohol testing requirements of the implied consent law[4] and offered him an opportunity to contact an attorney.[5] The plaintiff

---

[3] The defendant did not provide any testimony of a service technician relative to the particular mechanism of the particular car involved. Cf. *State* v. *Haight*, 88 Conn. App. 235, 240 n.6, 869 A.2d 251, cert. granted on other grounds, 273 Conn. 939, 875 A.2d 44 (2005). The police report, without amplification, is as stated in the text.

[4] General Statutes § 14-227b (a) provides in relevant part: "Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ."

[5] General Statutes § 14-227b (b) provides in relevant part: "If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the

agreed to take a Breathalyzer test. The first test was administered at 4:16 a.m., and the result showed a blood alcohol content of 0.168 percent. The second test was administered at 4:54 a.m., and the result showed a blood alcohol content of 0.144 percent.

A written report of the arrest and elevated blood alcohol content was forwarded to the department of motor vehicles pursuant to § 14-227b.[6] The defendant notified the plaintiff that his operator's license would be suspended for a period of ninety days because he had operated a motor vehicle while under the influence of intoxicating liquor and that he was entitled to a hearing to contest the suspension. Pursuant to § 14-227b,[7] the plaintiff requested and was subsequently granted an administrative hearing on the proposed license suspension.

On July 7, 2004, a hearing was held before James Quinn, a department of motor vehicles hearing officer.

police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license . . . may be suspended in accordance with the provisions of this section . . . if such person submits to such test and the results of such test indicate that such person has an elevated blood alcohol content . . . [t]he police officer shall make a notation upon the records of the police department that such officer informed the person that such person's license . . . may be suspended . . . if such person submitted to such test and the results of such test indicated that such person had an elevated blood alcohol content."

[6] See footnote 1.

[7] General Statutes § 14-227b (g) provides in relevant part: "If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension . . . . The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ."

Quinn found that (1) the police officer had probable cause to arrest the plaintiff for a violation specified in § 14-227b, (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to the Breathalyzer test, which indicated that his blood alcohol content was 0.08 percent or more, and (4) the plaintiff was operating the motor vehicle. In subordinate findings, the hearing officer found that "[t]he [police] officer had probable cause to arrest the [plaintiff] after finding him asleep behind the wheel of his motor vehicle parked alongside [Interstate] 95 with the [car] key [in] the ignition and the [windshield] wiper[s] and heater running. The [plaintiff] had been drinking earlier and was very lost." On the basis of the findings, the defendant suspended the plaintiff's operator's license for ninety days.[8]

On July 13, 2004, the plaintiff appealed from his license suspension to the Superior Court, claiming that the decision of the hearing officer was contrary to law and fact on the following grounds: (1) there was no probable cause for arrest, (2) he was not operating the motor vehicle and (3) the breath test was not administered within two hours of the time of operation. On November 9, 2004, the court sustained the appeal, finding that there was not substantial evidence of operation, there was no probable cause and that it was unclear whether the tests were administered in a timely fashion. This appeal followed.

We begin by articulating the standard of review for an appeal from the decision of an administrative agency.

---

[8] General Statutes § 14-227b provides in relevant part: "(h) If, after such hearing, the commissioner does not find on any one of the said issues in the negative . . . the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (i) of this section. . . .

"(i) The commissioner shall suspend the operator's license . . . of a person . . . against whom, after a hearing, the commissioner held pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders a decision, whichever is later, for a period of . . . ninety days . . . ."

"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted." *MacDermid, Inc.* v. *Dept. of Environmental Protection,* 257 Conn. 128, 136, 778 A.2d 7 (2001). General Statutes § 4-183 (j), which describes the scope of judicial review of administrative decisions, provides in relevant part: "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

"With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection,* supra, 257 Conn. 136. The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. See General Statutes § 4-183 (j) (5) and (6). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record."

(Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection,* supra, 257 Conn. 137.

"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) Id. Proof of operation is a factual determination. *O'Rourke* v. *Commissioner of Motor Vehicles,* 33 Conn. App. 501, 505, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994); see, e.g., *State* v. *Hanusiak,* 4 Conn. Cir. Ct. 34, 46, 225 A.2d 208 (1966) (§ 14-227b contemplates that trier of facts shall make finding of operation).

The defendant first claims that the court improperly held that the hearing officer's finding that the plaintiff had operated the motor vehicle is not supported by the record. In his brief and at oral argument, the defendant contended that the fact that the plaintiff was reclined backward in the driver's seat of a motor vehicle, which was parked on the shoulder of Interstate 95 with the left turn signal flashing, windshield wipers operating, heater blower motor on and car key in the "on" position of the ignition, established operation at the moment Comeau approached the vehicle.[9] We disagree.

---

[9] The defendant does not claim that the plaintiff operated the motor vehicle at an earlier time and that operation ceased before Comeau approached the vehicle. Even if the defendant claimed that the plaintiff had operated the motor vehicle at an earlier time and the court could make such a finding, it would not permit us to sustain the appeal because there is no evidence establishing the requisite nexus with intoxication at the time of operation.

As we will discuss, at the time of his arrest, the plaintiff was not operating a motor vehicle within the meaning of the law. See *State* v. *Swift,* 125 Conn. 399, 403, 6 A.2d 359 (1939). No one had seen him actually operating the car, and there was no evidence to show how long it had been parked on the

The relevant inquiry, here, is what constitutes operation within the meaning of § 14-227b.[10] Nothing in the statute clarifies the meaning of "operate." The use of the term is ambiguous and makes no clear distinction between "driving" and "operating" a motor vehicle. Our Supreme Court established such a distinction, however, when it approved a jury instruction regarding operation in *State* v. *Swift*, 125 Conn. 399, 402–403, 6 A.2d 359 (1939). The statute "refers to persons who shall operate a motor vehicle, and is not confined to persons who shall drive a motor vehicle. A person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." Id.

In *State* v. *Ducatt*, 22 Conn. App. 88, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990), this court had the opportunity to further elucidate the definition of operation from *Swift*. This court explained: "An accused operates a motor vehicle within the meaning of [the statute] when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the

side of the highway. Time is an element of importance. The defendant had the initial burden of proving not only that the plaintiff was operating the car, but also that he was under the influence of intoxicating liquor at the time of operation. That element is not satisfied merely by showing that he was intoxicated when he was found by the officer. See *State* v. *DeCoster*, 147 Conn. 502, 505, 162 A.2d 704 (1960).

[10] Most of the cases discussing the meaning of "operation" are, unlike the present appeal from an administrative proceeding, criminal in nature. We recognize that the standard of proof in an administrative proceeding is less rigorous than that in a criminal proceeding. The definition of "operation," however, remains the same.

accused moves the vehicle or not." Id., 93. In *State* v. *Wiggs*, 60 Conn. App. 551, 760 A.2d 148 (2000), this court, again, explained that "[m]erely engaging the ignition or manipulating the gearshift or releasing the parking brake would satisfy the requisite intent"; id., 554; to set in motion the motive power of the vehicle.

In this case, the record lacks a substantial basis of fact from which the hearing officer could have found that the plaintiff was operating the motor vehicle at the time Comeau approached. Even if we assume that the plaintiff, fully reclined and sleeping in the driver's seat, was in a position to control the movements of the vehicle, he was not doing any act, manipulating any machinery or making use of any mechanical or electrical agency that alone or in sequence would set in motion the motive power of the vehicle.

The plaintiff was not acting at all. He lay motionless and nonresponsive, reclined in the driver's seat. He was not touching any of the mechanical or electrical components of the vehicle that alone or in sequence would set in motion the motive power of the vehicle. Although the car key was in the ignition switch, which was in the "on" position, the ignition was not engaged, the engine was not running and, at the time Comeau approached, the plaintiff was not manipulating or making use of anything that alone or in sequence would set in motion the motive power of the vehicle.

Furthermore, the evidence regarding the operation of the left turn signal, heater blower motor and windshield wipers does not even aid in establishing a substantial basis in fact from which operation can be found. The fact that it was May and the heater blower motor of the vehicle was operating, although helpful in determining intoxication, carries little weight in determining whether the plaintiff was operating the vehicle. The heater blower motor cannot alone or in sequence set

in motion the motive power of the vehicle. In this context, the fact that the windshield wipers were operating when rain was not falling also carries no weight in determining whether the plaintiff was operating the vehicle. Like the heater blower motor, the windshield wipers cannot alone or in sequence set in motion the motive power of the vehicle. Like the evidence regarding the windshield wipers and blower motor, Comeau's report indicating that the plaintiff's vehicle was parked on the right shoulder of Interstate 95 with the left turn signal flashing does not aid in establishing a substantial basis in fact to find operation. The turn signal is not capable of setting in motion the motive power of the vehicle.

In support of the argument that the plaintiff was operating the motor vehicle at the time Comeau approached the vehicle, the defendant cites numerous cases. We believe, however, that our decision that there was insufficient evidence of operation is in accord with the cases cited by the defendant. A review of those cases demonstrates that there are essentially two lines of cases that govern a finding of "operation." First, when an alleged operator is found in a position to control the movements of a motor vehicle and the vehicle's engine is running, the courts have consistently found operation. E.g., *State* v. *Wiggs*, supra, 60 Conn. App. 551, *State* v. *Angueira*, 51 Conn. App. 782, 725 A.2d 967 (1999), *State* v. *Marquis*, 24 Conn. App. 467, 589 A.2d 376 (1991), *State* v. *Ducatt*, supra, 22 Conn. App. 88.[11]

---

[11] In *Wiggs*, "[a]n officer with the Milford police department received a call advising him that a blue Ford Thunderbird was being operated in an erratic manner on Gulf Street in Milford. . . . While investigating the complaint, the officer observed a vehicle matching the description provided by the caller that was stopped in a parking lot adjacent to Gulf Street. As he approached, the officer noticed that the vehicle's engine was running and that the defendant was in the driver's seat." *State* v. *Wiggs*, supra, 60 Conn. App. 553. Affirming the judgment of the trial court, this court concluded that the defendant's motion to dismiss for insufficient evidence of operation was properly denied. Id., 555.

In *Angueira*, an officer with the North Haven police department "observed a 1991 Plymouth Sundance parked in the lot of the Holiday Inn. Upon

Those cases are distinguishable from the present case, most significantly, because the engine of the plaintiff's motor vehicle was not running, whereas in the cases cited by the defendant, the engine was running.

The second line of cases involves alleged operators who were found in vehicles without the engines running. In those cases, courts have found operation only where the alleged operator was engaged in some action, manipulating, for any purpose, the machinery of the

investigation, the officer found the engine running, the interior light on, and the defendant unconscious in the driver's seat. The defendant was slumped over onto the passenger seat. On the floor of the passenger side were several empty beer bottles in an open bag. The officer was unable to awaken the defendant from outside the vehicle. Even turning on the siren of his patrol car was to no avail. The defendant finally was roused when the officer opened the unlocked driver's side door and shook him awake. Upon opening the door, the officer immediately detected a strong odor of alcohol. The defendant was extremely disoriented and did not know where he was. . . . The defendant attempted field sobriety tests from approximately 11:45 to 11:55 p.m. without success. He was then placed under arrest and transported to police headquarters. At the police station, the defendant stated that he had consumed six beers between 10 p.m. and 11:30 p.m. at his apartment in Branford." *State* v. *Angueira*, supra, 51 Conn. App. 784. Affirming the judgment of the trial court, this court determined that reasonable inferences could be drawn to prove beyond a reasonable doubt that the defendant operated his motor vehicle and that he did so while under the influence of alcohol. Id., 789. In *Angueira*, unlike the present appeal, the defendant's statements to police combined with the other evidence established the required nexus between intoxication and operation. No such statements and evidence exist in the present appeal.

In *Marquis*, "a Woodbury police officer found the defendant leaning against the door of his pickup truck in the parking lot of [an] inn. The officer left and later returned to find the defendant asleep, sitting in the front seat of his truck with his head resting on the steering wheel. The key was in the ignition and the engine was running. The defendant awoke, and admitted to the officer that he was intoxicated." *State* v. *Marquis*, supra, 24 Conn. App. 468. This court, per curiam, affirmed the judgment of conviction. Id., 469.

In *Ducatt*, an officer with the Canton police department "noticed a car idling in the middle of the parking lot of a furniture store, with its headlights and brake lights lit. [The officer] found the defendant sitting in the driver's seat, slumped over and unconscious. The defendant had one hand draped over the steering wheel and the other 'curled around the base of' the gear shift. On his fourth attempt, [the officer] succeeded in awakening the defendant to the point that he was able, with difficulty, to produce his driver's license." *State* v. *Ducatt*, supra, 22 Conn. App. 89. This court, concluding that the statute did not require the state to prove that the defendant intended to move the vehicle, affirmed the judgment of conviction. Id., 93.

motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not. Compare *State* v. *Swift*, supra, 125 Conn. 399 with *State* v. *Haight*, 88 Conn. App. 235, 869 A.2d 251, cert. granted on other grounds, 273 Conn. 939, 875 A.2d 44 (2005), and *State* v. *DeCoster*, 147 Conn. 502, 162 A.2d 704 (1960).[12] Here, at the time the officer approached,

[12] In *Swift*, officers from the New London police department "found the defendant sitting behind the wheel attempting to start the engine of the car while [a passenger], the only other occupant of the car at the time of the accident [at issue], was attempting to push it." *State* v. *Swift*, supra, 125 Conn. 401. Our Supreme Court, finding that there was no error in the jury charge on the subject of operation, affirmed the judgment of conviction. Id., 403–405.

In *Haight*, "Kevin J. Dowling, a New Canaan police officer, was driving along Elm Street when he observed the defendant's Lexus RX300 parked in a parking space with its headlamps illuminated. He did not observe anyone in or around the motor vehicle and drove around the block. Dowling returned to the vehicle and observed the defendant inside of the vehicle, asleep. Dowling looked inside the vehicle and saw that the keys were in the ignition in the off position. The vehicle's motor was not running. Dowling attempted to rouse the defendant, to no avail. Dowling then opened the driver's door and a warning chime in the vehicle sounded, indicating that the keys were in the ignition and that the door was open. The defendant was placed under arrest and subsequently submitted to breath tests, which he failed." *State* v. *Haight*, supra, 88 Conn. App. 237. This court, reversing the conviction, determined that there was no evidence demonstrating when the defendant operated his motor vehicle in relation to his intoxication and that the evidence did not demonstrate that he was operating his motor vehicle when Dowling discovered him. Id., 241–42.

In *DeCoster*, "a police officer found the defendant slumped over the steering wheel of his car, which was stopped on Wright Avenue in New Haven. The defendant was intoxicated. He was the owner of the car and had a license to operate a motor vehicle. The key was in the switch but the ignition was turned off. There was damage to the car on the right side and both tires on that side were flat. Wright Avenue is the first street intersecting Amity Road west of the intersection of Amity Road and Whalley Avenue, where there is a rotary traffic circle with signs directing traffic to 'Go Right.' Four of these signs had been knocked down." *State* v. *DeCoster*, supra, 147 Conn. 504. Concluding that the state failed to establish that the defendant was operating a motor vehicle at the time of his arrest or that he had operated the motor vehicle at an earlier time when he was under the influence of alcohol, our Supreme Court reversed the judgment of conviction. Id., 504–506.

The defendant also cites *State* v. *Englehart*, 158 Conn. 117, 256 A.2d 231 (1969), and *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 33 Conn.

the plaintiff was not doing any act, manipulating any machinery or making use of any mechanical or electrical agency that alone or in sequence would set in motion the motive power of the vehicle. The plaintiff was sleeping. He was not touching any of the mechanical or electrical agencies of the vehicle. As a result, the record lacks a substantial basis of fact from which the hearing officer could find that the plaintiff was operating the motor vehicle at the time the officer approached.

The judgment is affirmed.

In this opinion the other judges concurred.

App. 501. Both cases are plainly distinguishable because the courts found operation at an earlier period in the evening, not when the officer initially approached the vehicle. See *State* v. *Englehart,* supra, 158 Conn. 123–24; *O'Rourke* v. *Commissioner of Motor Vehicles,* supra, 33 Conn. App. 508–509. In *Englehart,* the Supreme Court found operation at an earlier point in the evening when the defendant parked the vehicle in the middle of the road with the ignition turned on and the gear shift in the drive position, not at the time the officers approached the vehicle. *State* v. *Englehart,* supra, 123–24. Although the police found: (1) the defendant " 'dead drunk,' " seated in the driver's seat and slumped over the steering wheel, (2) the vehicle parked in the middle of the road with the key in the ignition, turned to the "on" position, without the engine running and (3) the vehicle's gear shift in the drive position, the court did not affirm the judgment of conviction on the ground that the defendant was operating the vehicle at the time the police approached her. Id., 120, 123–24. The court's holding, instead, implies that the defendant was not operating the vehicle at the time the officers approached.