# STATE OF CONNECTICUT *v.* ANDREW C. HAIGHT
# (SC 17435)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 15—officially released August 22, 2006

*Sarah Hanna,* special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Tiffany M. Lockshier,* deputy assistant state's attorney, for the appellant (state).

*Brenden P. Leydon,* with whom was *Mark D. Phillips,* for the appellee (defendant).

*Opinion*

ZARELLA, J. The sole issue in this appeal is whether the defendant, Andrew C. Haight, "operated" a motor vehicle under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) when he was asleep in the driver's seat of his vehicle with the key inserted into the ignition. Because we conclude that this action was sufficient to constitute the operation of a motor vehicle, we reverse the judgment of the Appellate Court.

The record reflects the following relevant facts and procedural history. Shortly after midnight on October 20, 2001, Officer Kevin J. Dowling of the New Canaan police department observed a Lexus RX 300 legally parked on Elm Street in New Canaan. The vehicle's headlights were illuminated, but the motor was not running. Dowling initially believed that the vehicle was unoccupied but, after briefly leaving the scene and then returning, Dowling discovered the defendant asleep in the driver's seat. Dowling roused the defendant and, upon opening the vehicle's door, heard a warning chime. Dowling observed the key in the ignition but did not notice its position. The defendant submitted to a series of field sobriety tests and was arrested after failing them. He subsequently submitted to breath tests, which he also failed.

The record also reflects that a key inserted into the ignition of a Lexus RX 300 can be turned to four positions: off, accessory, on and start. The key must be turned to the "start" position initially to engage the motor, and to the "on" position to continue running the motor. The headlights of the RX 300 may be illuminated regardless of whether the key is in the ignition. When the door of an RX 300 is open and the key is in the ignition in either the "off" or "accessory" position, a warning chime will sound.

The defendant thereafter was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a). The defendant filed a motion to dismiss the charge on the ground that "the arresting [officer] did not, as a matter of law, have reasonable grounds to believe [that] the defendant was committing, or had committed, a crime . . . ." Following an evidentiary hearing, the trial court denied the defendant's motion to dismiss, concluding that "[it] [was] for the trier of [fact] . . . to determine if there was 'operation'" of the motor vehicle. The defendant then entered a conditional plea of nolo contendere,[1]

---

[1] The defendant's plea was accepted pursuant to General Statutes § 54-94a and Practice Book § 61-6 (a) (2) (i).

General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such . . . motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the . . . motion to dismiss. . . ."

Practice Book § 61-6 (a) (2) (i) provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . (c) . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ."

and the trial court rendered judgment in accordance with the plea. The defendant subsequently appealed from the judgment of the trial court to the Appellate Court.

The Appellate Court reversed the judgment of the trial court, concluding that "the state did not factually support its allegation of operation by presenting evidence that a key was in the motor vehicle's ignition, while such key was neither in the 'on' nor 'start' positions of the ignition, even when the motor vehicle's headlamps were illuminated." *State* v. *Haight*, 88 Conn. App. 235, 239–40, 869 A.2d 251 (2005). We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that at the time of his arrest the defendant was not operating his motor vehicle?" *State* v. *Haight*, 273 Conn. 939, 875 A.2d 44 (2005).

The state argues that the defendant "operated" his vehicle under the definition of that term as set forth in *State* v. *Swift*, 125 Conn. 399, 6 A.2d 359 (1939).[2] The state argues that, because "a jury reasonably could find that . . . the defendant operated his motor vehicle when he intentionally inserted his key into the ignition and partially turned it," the trial court's denial of the defendant's motion to dismiss was proper, and that the defendant's conviction therefore should stand.

The defendant objects to the state's assertion that he partially turned the key in the ignition, an assertion that he characterizes as "conjectural . . . ." The defendant instead analogizes the facts of this case to those of *State* v. *DeCoster*, 147 Conn. 502, 162 A.2d 704 (1960), a decision that, according to the defendant, establishes

---

[2] The language of the statutory prohibition against operating a motor vehicle while under the influence of intoxicating liquor or any drug has not changed since its enactment in 1921. Compare General Statutes § 14-227a (a) with Public Acts 1921, c. 400, § 30.

"beyond question that simply having a key in the ignition is not sufficient to establish a prima facie case of operating [a motor vehicle] under the influence." As such, the defendant argues, the evidence is insufficient to establish that he was operating a motor vehicle while under the influence of intoxicating liquor. Because we disagree with both the defendant's interpretation of *DeCoster* and his claim of evidentiary insufficiency, we reverse the judgment of the Appellate Court.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001).

The state's claim also implicates a question of statutory interpretation. Our review is therefore plenary. E.g., *Parrot* v. *Guardian Life Ins. Co. of America*, 273 Conn. 12, 18, 866 A.2d 1273 (2005). When interpreting a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 735, 792 A.2d 752 (2002). To do so, we first consult "the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

We begin our analysis by looking to the statutory provision in question. General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. . . ." Section 14-227a (a) prohibits *operating* a motor vehicle while under the influence rather than merely *driving* a motor vehicle while under the influence. It is well settled that "operating" encompasses a broader range of conduct than does "driving." See *State* v. *Swift*, supra, 125 Conn. 402–403 (statute "refers to persons who shall operate a motor vehicle, and is not confined to persons who shall drive a motor vehicle"); see also *State* v. *Gordon*, 84 Conn. App. 519, 527, 854 A.2d 74 ("[t]he definition of 'operation' does not require [a] defendant to drive the car"), cert. denied, 271 Conn. 941, 861 A.2d 516 (2004). Neither § 14-227a nor any related statute, however, defines "operation" of a motor vehicle. Moreover, the legislative history of § 14-227a and its predecessor statutes offers no insight into the definition of "operation" of a motor vehicle.

In *State* v. *Swift*, supra, 125 Conn. 403, however, this court set forth the definition of "operation" of a motor vehicle that our courts have applied since. In that case, the defendant, Lyman F. Swift, "[a]fter visiting various dramshops in New London during the evening and partaking of intoxicating liquors . . . drove a car to Norwich . . . and returned to New London . . . . In an attempt to avoid another car on Williams Street in New London, [Swift] drove his car into [an embankment]. He was under the influence of intoxicating liquors at

the time . . . . Police officers arrived on the scene immediately thereafter and found [Swift] sitting behind the wheel attempting to start the engine of the car while [a passenger], the only other occupant of the car at the time of the accident, was attempting to push it." Id., 401. Swift claimed that he never had driven the vehicle and entered the driver's seat only after the vehicle had collided with the embankment, when his companion had left the vehicle to attempt to push it. Id.

At the conclusion of Swift's ensuing trial on the charge of operating a motor vehicle while under the influence of intoxicating liquor, the trial court instructed the jury regarding the definition of "operation" as follows: *"A person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle.* So if you find that the accused, while under the influence of intoxicating liquor, got into the automobile, while it was standing [at the] side of the street, and manipulated the machinery of the motor for the purpose of putting the automobile into motion, the accused being in the car and in a position to control its movements, the accused would be guilty of operating a car under the influence of intoxicating liquor, whether the automobile moved or not." (Emphasis added; internal quotation marks omitted.) Id., 403. Although Swift challenged the trial court's instruction on appeal; id., 402; this court concluded that the instruction was proper and upheld Swift's conviction and the trial court's instruction. Id., 403, 405.

The present case is analogous to *Swift.* In both cases, the defendant failed to set the vehicle in motion, or even to run the vehicle's motor. Nothing in our definition of "operation" requires the vehicle to be in motion or its motor to be running. See, e.g., id., 403; *State* v. *Lariviere,*

2 Conn. Cir. Ct. 221, 225, 197 A.2d 529 (1963) ("a person may be convicted of 'operating' a motor vehicle while under the influence of intoxicating liquor without it necessarily being shown that the automobile was actually in motion or even had the engine going"). The act of inserting the key into the ignition and the act of turning the key within the ignition are preliminary to starting the vehicle's motor. Each act, in sequence with other steps, "will set in motion the motive power of the vehicle." (Internal quotation marks omitted.) *State* v. *Swift*, supra, 125 Conn. 403. Each act therefore constitutes "operation" of the vehicle under the definition set forth in *Swift*. See, e.g., *State* v. *Jones*, 2 Conn. Cir. Ct. 605, 607, 203 A.2d 447 (1964) (attempting to start engine constitutes operation, even if motor fails to "catch").

Numerous courts in other jurisdictions have concluded that a motorist who is found sleeping or unconscious in a stationary vehicle with the motor not running violates the applicable prohibition on operating or being in actual physical control of a motor vehicle while intoxicated or under the influence of intoxicating liquor or drugs. E.g., *State* v. *Gill*, 70 Ohio St. 3d 150, 154, 637 N.E.2d 897 (1994) (concluding that defendant in each case violated statute prohibiting operation of motor vehicle while under influence of alcohol when he "was intoxicated and in the driver's seat of his vehicle with the key in the ignition," regardless of whether motor was running), cert. denied sub nom. *Robinson* v. *Sylvania*, 514 U.S. 1023, 115 S. Ct. 1371, 131 L. Ed. 2d 227 (1995); *Hughes* v. *State*, 535 P.2d 1023, 1024 (Okla. Crim. App. 1975) (concluding that defendant violated statute prohibiting being in actual physical control of motor vehicle while under influence of intoxicating liquor when he was found sleeping or unconscious in driver's seat of vehicle with key in ignition and motor not running); *State* v. *Hall*, 353 N.W.2d 37, 42 (S.D. 1984) (concluding that defendant violated statute prohibiting

being in actual physical control of vehicle while under influence of alcohol when he was found sleeping or unconscious in driver's seat of vehicle with key in ignition and motor not running ); *Adams* v. *State,* 697 P.2d 622, 625 (Wyo. 1985) (concluding that defendant violated statute prohibiting having actual physical control of vehicle while under influence of intoxicating liquor when he was found unconscious in driver's seat of vehicle with lights off, key in ignition and motor not running); see also *State* v. *Cooper,* 120 Ohio App. 3d 416, 419–20, 698 N.E.2d 64 (1997) ("[a] person sitting in the driver's seat of an automobile with the keys in the ignition is 'operating' a motor vehicle . . . even if the engine is not running"); *Stevenson* v. *Falls Church,* 243 Va. 434, 439, 416 S.E.2d 435 (1992) (Compton, J., dissenting) ("when a drunk [person] is sitting in the driver's seat of a parked, operable motor vehicle, and he is alone and has inserted the key in the ignition switch, he is in 'actual physical control' of the vehicle"); cf. *Atkinson* v. *State,* 331 Md. 199, 219, 627 A.2d 1019 (1993) ("There [was] no evidence that [the defendant] did anything but climb into his vehicle, put the key in the ignition, and go to sleep. Without such evidence, and in light of . . . [the fact] that [the defendant] was not in 'actual physical control' of the vehicle when apprehended . . . his conviction [was reversed under the statute prohibiting *driving* or attempting to drive while intoxicated]." [Emphasis added.]); but see *Stevenson* v. *Falls Church,* supra, 438 ("[b]ecause the presence of the key in the ignition switch in the off position did not engage the mechanical or electrical equipment of [the defendant's] car, [the defendant] did not 'drive or operate' the car").

The Ohio case of *State* v. *Gill,* supra, 70 Ohio St. 3d 150, is particularly persuasive because § 4511.19 of the Ohio Revised Code prohibits, in language similar to that of § 14-227a (a), the "operat[ion] [of] any vehicle . . .

within th[e] state" by any "person under the influence of alcohol . . . ." Ohio Rev. Code Ann. § 4511.19 (A) (1) (Banks-Baldwin 1993). In that consolidated case, each defendant was found sleeping in the driver's seat of his respective vehicle with the key in the ignition and the motor not running.[3] *State* v. *Gill*, supra, 154. The court rejected the defendants' argument that the vehicle's motor must be running for "operation" to have occurred. Id., 153–54. The court instead upheld the defendants' convictions, reasoning that "[a] clear purpose of [Ohio Revised Code §] 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated . . . ." Id., 154.

We previously have recognized Connecticut's "unambiguous policy . . . [of] ensuring that our highways are safe from the carnage associated with drunken drivers." *State* v. *Stevens*, 224 Conn. 730, 739, 620 A.2d 789 (1993). In light of this policy and the fact that the insertion of a key into the ignition is an "act . . . which alone or in sequence will set in motion the motive power of the vehicle"; (internal quotation marks omitted) *State* v. *Swift*, supra, 125 Conn. 403; we conclude that the defendant's act of inserting the key into the ignition constituted operation of a motor vehicle within the meaning of § 14-227a (a).

The defendant argues that, contrary to the state's assertion,[4] the evidence was insufficient to support a reasonable inference that the key was found in the "accessory" position of the ignition rather than in the "off" position. The distinction between the two positions, however, is inconsequential. Mere insertion of

---

[3] We note that, with respect to one of the defendants in *Gill*, the key in the ignition was found to be in the accessory position. *State* v. *Gill*, supra, 70 Ohio St. 3d 151 (discussing facts of case number 93-1098).

[4] The state alleged in its brief that "the defendant . . . got into his car . . . inserted his key into the ignition and partially turned it."

the key into the ignition is an "act . . . which alone or in sequence will set in motion the motive power of the vehicle" (internal quotation marks omitted); id.; and, therefore, itself constitutes operation of the vehicle. Whether the defendant turned the key in the ignition does not affect the fact that he was operating the vehicle within the meaning of § 14-227a simply by inserting the key into the ignition.

The defendant relies heavily on our decision in *State v. DeCoster*, supra, 147 Conn. 502, to support his claim that inserting the key into the ignition does not constitute the "operation" of a vehicle. In that case, a police officer found the defendant, Alvah DeCoster, intoxicated and slumped over the steering wheel of his car, which was stopped on the road. Id., 504. "The key was in the switch but the ignition was turned off. There was damage to the car on the right side and both tires on that side were flat." Id. Traffic signs at a nearby rotary had been knocked down. Id. We reversed DeCoster's conviction of operating a motor vehicle under the influence of intoxicating liquor, reasoning that "[n]o one had seen [DeCoster] operating the car, and there was no evidence to show how long it had been standing in the place where it was found. Even though the court might infer that [DeCoster's] car had struck the signs at the traffic circle, there was no evidence whatever to show when or how the collision occurred." Id., 504–505. In the course of our analysis, we noted that, "[a]t the time of his arrest, [DeCoster] was not operating a motor vehicle within the meaning of the law." Id., 504.

The defendant seizes upon this last remark to argue that *DeCoster* established "beyond question that simply having a key in the ignition is not sufficient to establish a prima facie case of operating [a motor vehicle] under the influence." The remark that the defendant seizes upon, however, was dictum. The issue of whether the defendant in *DeCoster* was operating his vehicle at the

time of his arrest was not contested.[5] In *DeCoster*, the issue before this court, instead, was the sufficiency of circumstantial evidence to sustain DeCoster's conviction. See id., 505 (concluding that, "in the absence of any evidence as to the time when the defendant last operated his car, the conclusion of the trial court that he violated the statute was unwarranted and invaded the realm of speculation and conjecture"). The statement that, "[a]t the time of his arrest, [DeCoster] was not operating a motor vehicle within the meaning of the law"; id., 504; did not bear on a contested issue, was unnecessary to the resolution of the case and, therefore, was dictum. It does not thwart our conclusion that the defendant in the present case engaged in conduct—specifically, inserting the key into the ignition—sufficient to constitute the "operation" of a motor vehicle under *Swift*.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[5] In fact, the arguments advanced by both parties in *DeCoster* assumed that DeCoster was *not* operating his vehicle at the time of his arrest. Although it was undisputed that a police officer had observed DeCoster slumped over his steering wheel with the key in the ignition before arresting him, DeCoster argued to this court that "[n]o one saw the automobile being operated either by [him] or any other person." *State* v. *DeCoster*, Conn. Supreme Court Records & Briefs, April Term, 1960, Pt. A-388, Defendant's Brief p. 4. Correspondingly, the state argued that the direct testimony of an eyewitness was not necessary to find DeCoster guilty of violating § 14-227a but described DeCoster as "[t]he only eyewitness" to any such conduct, despite the fact that it was undisputed that a police officer had observed DeCoster slumped over his steering wheel with the key in the ignition before arresting him. Id., State's Brief p. 7. The implication of both DeCoster's and the state's arguments is that DeCoster was not operating his vehicle when the officer discovered him and arrested him.