INDY SENGCHANTHONG *v.* COMMISSIONER OF MOTOR VEHICLES
(SC 17606)

Borden, Norcott, Katz, Vertefeuille and Sullivan, Js.

Argued January 10—officially released March 13, 2007

*Gregory T. D'Auria*, associate attorney general, with whom were *Priscilla J. Green*, assistant attorney gen-

eral, and, on the brief, *Richard Blumenthal,* attorney general, and *Nancy E. Arnold,* assistant attorney general, for the appellant (defendant).

*Steven A. Tomeo,* for the appellee (plaintiff).

*Opinion*

PER CURIAM. The sole issue in this appeal is whether the plaintiff, Indy Sengchanthong, was operating a motor vehicle within the meaning of General Statutes § 14-227b.[1] After a hearing, the defendant, the commissioner of motor vehicles (commissioner), suspended the plaintiff's motor vehicle operator's license for ninety days pursuant to that statute. The plaintiff appealed to the trial court, which sustained his appeal. Thereafter, the commissioner appealed from the judgment of the trial court to the Appellate Court. *Sengchanthong* v. *Commissioner of Motor Vehicles,* 92 Conn. App. 365, 885 A.2d 218 (2005). The Appellate Court affirmed the

---

[1] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test or if such person submits to such test and the results of such test indicate that such person has an elevated blood alcohol content, and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given . . . ."

Section 14-227b (i) authorizes the commissioner of motor vehicles to suspend a person's motor vehicle operator's license for ninety days if the person has been found, after a hearing, to have had an elevated blood alcohol content while operating a motor vehicle.

judgment of trial court, and we granted the commissioner's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that there was insufficient evidence to support a finding of the plaintiff's operation of a motor vehicle as required by . . . § 14-227b?" *Sengchanthong* v. *Commissioner of Motor Vehicles*, 277 Conn. 911, 911–12, 894 A.2d 992 (2006). We conclude that the plaintiff was operating a motor vehicle within the meaning of § 14-227b and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On May 30, 2004, at approximately 3:20 a.m., Officer Mark J. Comeau of the East Lyme police department, while traveling southbound on Interstate 95 in his police cruiser, observed a motor vehicle parked on the shoulder of Interstate 95 north-bound between exits 72 and 73. While investigating the motor vehicle, Comeau made the following observations. The vehicle's left turn signal was flashing. Although rain was not falling, the windshield wipers were operating. The plaintiff was reclined in the driver's seat. Comeau flashed a spotlight at both the front and rear of the vehicle, but the plaintiff did not respond. Comeau drove his police cruiser behind the vehicle.

"As Comeau approached the plaintiff's vehicle, he could hear the heater blower motor running. Comeau also observed that the [car] key . . . was in the ignition and was turned to the on position. Comeau knocked on the driver's window and did not get an immediate response. After knocking very hard on the driver's window, Comeau roused the plaintiff. While speaking with the plaintiff, Comeau smelled a strong odor of alcohol inside the vehicle and on the plaintiff's breath. The plaintiff also had glassy, bloodshot eyes. The plaintiff was the sole occupant of the vehicle and appeared to

be disoriented, as well as intoxicated. When asked where he had been driving, the plaintiff stated that he started out driving in New Britain and was headed to Manchester via Interstate 84. He then argued that he was on Interstate 84 instead of Interstate 95. The plaintiff informed Comeau that he had consumed one beer prior to starting his trip home at 9 p.m. Comeau asked the plaintiff to exit his vehicle. Comeau then administered a standard battery of field sobriety tests. Due to the plaintiff's poor performance of the tests, Comeau placed him under arrest on a charge of operating a motor vehicle while under the influence of intoxicating liquor.

"Comeau transported the plaintiff to police headquarters, apprised him of the mandatory alcohol testing requirements of the implied consent law and offered him an opportunity to contact an attorney. The plaintiff agreed to take a Breathalyzer test. The first test was administered at 4:16 a.m., and the result showed a blood alcohol content of 0.168 percent. The second test was administered at 4:54 a.m., and the result showed a blood alcohol content of 0.144 percent.

"A written report of the arrest and elevated blood alcohol content was forwarded to the department of motor vehicles pursuant to § 14-227b. The [commissioner] notified the plaintiff that his operator's license would be suspended for a period of ninety days because he had operated a motor vehicle while under the influence of intoxicating liquor and that he was entitled to a hearing to contest the suspension. Pursuant to § 14-227b, the plaintiff requested and was subsequently granted an administrative hearing on the proposed license suspension.

"On July 7, 2004, a hearing was held before James Quinn, a department of motor vehicles hearing officer. Quinn found that (1) the police officer had probable

cause to arrest the plaintiff for a violation specified in § 14-227b, (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to the Breathalyzer test, which indicated that his blood alcohol content was 0.08 percent or more, and (4) the plaintiff was operating the motor vehicle. In subordinate findings, the hearing officer found that [t]he [police] officer had probable cause to arrest the [plaintiff] after finding him asleep behind the wheel of his motor vehicle parked alongside [Interstate] 95 with the [car] key [in] the ignition and the [windshield] wiper and heater running. The [plaintiff] had been drinking earlier and was very lost. On the basis of the findings, the [commissioner] suspended the plaintiff's operator's license for ninety days.

"On July 13, 2004, the plaintiff appealed from his license suspension to the Superior Court, claiming that the decision of the hearing officer was contrary to law and fact on the following grounds: (1) there was no probable cause for arrest, (2) he was not operating the motor vehicle and (3) the breath test was not administered within two hours of the time of operation. On November 9, 2004, the court sustained the appeal, finding that there was not substantial evidence of operation, there was no probable cause and that it was unclear whether the tests were administered in a timely fashion." (Internal quotation marks omitted.) *Sengchanthong* v. *Commissioner of Motor Vehicles*, supra, 92 Conn. App. 367–70. The commissioner appealed to the Appellate Court claiming that the trial court improperly concluded that (1) the hearing officer's finding that the plaintiff operated a motor vehicle was not supported by the record and (2) that it was not clear whether the blood alcohol content test given to the plaintiff was timely taken. Id., 367. The Appellate Court disagreed

with the commissioner's first claim, did not reach his second claim and affirmed the judgment of the trial court.[2] Id., 367, 372, 378. This certified appeal followed.

At the outset, we set forth our standard of review. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

"Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of

---

[2] In the present appeal, the plaintiff continues to claim the trial court properly found that the commissioner had not established that the plaintiff had been operating the vehicle within two hours before the blood alcohol test was administered to him at 4:16 a.m. on May 30, 2004, as required by § 14-277b (g). This claim is predicated on his claim that he was not operating the vehicle when he was discovered by the police at approximately 3:20 a.m. Because we conclude that he was operating the vehicle when he was discovered, we need not reach this claim.

the law to the facts found and could reasonably and logically follow from such facts. . . . We also have held that an exception is made when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . Accord *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, [232 Conn. 91, 109, 653 A.2d 782 (1995)] ([a]s we have stated many times, the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . [however] it is for the courts, and not for administrative agencies, to expound and apply governing principles of law . . . )." (Internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 771–72, 817 A.2d 644 (2003).

In the present case, the question of whether the plaintiff was operating a motor vehicle within the meaning of § 14-227b is a matter of statutory interpretation. *State* v. *Haight*, 279 Conn. 546, 550–51, 903 A.2d 217 (2006) (whether defendant was operating motor vehicle within meaning of General Statutes § 14-227a was question of statutory interpretation). Because the application of the statute to the particular facts of this case previously had not been subject to judicial scrutiny when the commissioner suspended the plaintiff's motor vehicle operator's license, our review is plenary.

After this appeal was filed, but before oral argument, this court issued its decision in *State* v. *Haight*, supra, 279 Conn. 546. The issue in that case was whether the defendant, who had been discovered by a police officer asleep in the driver's seat of a Lexus RX 300 with the key in the ignition, was operating the vehicle within the meaning of § 14-227a. Id., 549. We concluded that he was. We stated that "[m]ere insertion of the key into the ignition is an act . . . which alone or in sequence will set in motion the motive power of the vehicle . . .

and, therefore, itself constitutes operation of the vehicle." (Internal quotation marks omitted.) Id., 555–56. The fact that the defendant had been asleep in the vehicle when he was discovered did not affect our conclusion. Id., 553–55.

It is undisputed that the word "operating" as used in § 14-227b has the same meaning that it does in § 14-227a. See *Jagger* v. *Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 681, 849 A.2d 813 (2004) ("the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter" [internal quotation marks omitted]). The facts of the present case are indistinguishable from the facts in *Haight*.[3] Accordingly, we conclude that *Haight* governs this case and that the Appellate Court improperly determined that there was not substantial evidence to support the finding that the plaintiff was operating a motor vehicle within the meaning of § 14-227b.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to dismiss the plaintiff's appeal.

---

[3] The plaintiff argues that the present case is distinguishable from *Haight* because, unlike the defendant in that case, he had been operating the vehicle and then had *ceased* doing so by pulling off the highway, turning the key to disengage the motor, reclining his seat and removing his hands and feet from any part of the vehicle that could engage its motive power. We are not persuaded. The dispositive facts in *Haight* were that the defendant was in the driver's seat of the vehicle and had inserted a key in the ignition. Because that state of facts existed in the present case, the plaintiff was operating the vehicle and the preceding circumstances are irrelevant.