******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 14-227a (a)), "[a] person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content."

Pursuant further to statute (§ 14-227a (g)), any person who violates any provision of § 14-227a (a) shall be subject to sentence enhancement "for conviction of a third and subsequent violation within ten years after a prior conviction for the same offense," and, "[f]or purposes of the imposition of penalties for a . . . third and subsequent offense . . . a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as [those in § 14-227a (a) (1) or (2)] . . . shall constitute a prior conviction for the same offense."

Convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in Connecticut, the defendant appealed. After the jury found the defendant guilty of operating a motor vehicle under the influence, the trial court found the defendant guilty of being a third time offender and enhanced his sentence under § 14-227a (g). The enhancement was based on the defendant's two prior Florida convictions under that state's driving under the influence statute (§ 316.193 (1)). In enhancing the sentence, the trial court determined that the elements of the Florida statute were "substantially the same" as the elements of § 14-227a (a) for purposes of § 14-227a (g). The Appellate Court upheld the judgment of conviction, and the defendant, on the granting of certification, appealed to this court, claiming that the Appellate Court incorrectly had concluded that the elements of § 316.193 (1) were "substantially the same" as the elements of § 14-227a (a) for enhancement purposes because the phrase "actual physical control" of a vehicle in § 316.193 (1) criminalizes broader conduct than the term "operating" a motor vehicle in § 14-227a (a).

*Held* that the Appellate Court correctly concluded that the trial court properly had enhanced the defendant's sentence as a third time offender under § 14-227a (g), this court having concluded that the element of "actual physical control" in Fla. Stat. Ann. § 316.193 (1) is substantially the same as the "operating" element in § 14-227a (a):

1. This court defined the term "essential elements," as used in § 14-227a (g), and identified the essential elements of the Connecticut and Florida statutes:

Because the statutory scheme did not define either the word "essential" or "elements," this court looked to dictionary definitions of those terms and concluded that, to determine whether a conviction in another state satisfies the requirements of § 14-227a (g), a court first must determine the basic and necessary parts of the crime, including the actus reus, mens rea, and causation, under both Connecticut law and the law of the state of the prior conviction.

The plain language of § 14-227a (a) provides that the essential elements of that statute are that the defendant (1) operate (2) a motor vehicle (3) while under the influence of intoxicating liquor or drugs, or both, and this court clarified that the "under the influence" element could be established either by the subjective standards described in § 14-227a (a) (1) or by the objective measure of blood alcohol content described in § 14-227a (a) (2), those subdivisions having created alternative means of establishing the "under the influence" element but not having constituted essential elements themselves.

Florida courts have explained that the essential elements of Fla. Stat. Ann. § 316.193 (1) are (1) a person driving or in actual physical control of (2) a vehicle while (3) such person was under the influence of alcoholic beverages.

2. This court determined that the phrase "substantially the same," as used in § 14-227a (g), clearly and unambiguously means that the essential elements of the statutes at issue must be the same to a considerable degree:

This court disagreed with the defendant's proposed construction of "substantially the same" as meaning the essential elements must be the same "in substance" and, instead, concluded that a court must consider the degree of similarity between the statutory elements, as the defendant's construction would render the use of the word "substantially" superfluous, whereas a construction requiring that the basic and necessary parts of the crime be the same to a considerable degree does not render any term superfluous and, thus, was consistent with the statute as a whole.

Moreover, even if there were an ambiguity, the legislative history of § 14-227a (g) supported this court's construction of the phrase "substantially the same," as the legislature's purpose in adding that language was to address the problem of repeat offenders and to prevent individuals convicted of driving under the influence in other states from being treated as mere first time offenders in Connecticut.

Because there was no bright-line test for courts to apply in determining whether the elements of the statutes are the same to a considerable degree, this court clarified that courts must consider the extent to which two essential elements differ from each other on a case-by-case basis, that minor differences do not render § 14-227a (g) inapplicable if the Connecticut statute and the other state's statute criminalize conduct that is the same to a considerable degree, regardless of the facts underlying the specific out-of-state conviction, and that the elements of two statutes are substantially the same if the elements of the other state's statute are either the same or narrower than the elements of the Connecticut statute, or the elements of the other state's statute vary from the elements of the Connecticut statute but the elements, based on their definition under the statute or case law, criminalize conduct that is the same to a considerable degree.

3. This court applied the foregoing definition of "substantially the same" to the essential elements of §§ 14-227a (a) and Fla. Stat. Ann. § 316.193 (1) and concluded that, although the Connecticut and Florida statutes use different terminology, a comparison of the definitions of "operating" in § 14-227a (a) and "actual physical control" in § 316.193 (1), as interpreted by the relevant case law, supported the conclusion that those elements were substantially the same for purposes of § 14-227a (g):

Connecticut case law defines "operation" as any act that, alone or in sequence, will set in motion the motive power of a vehicle, even if there remains a temporary obstacle or impediment, and even if the engine is not running and the vehicle is not moving, so long as the defendant is in the vehicle, whereas Florida case law defines "actual physical control" as being physically in the vehicle and having the capability to operate the vehicle, which, in turn, is defined as taking an action to control the vehicle, even if there remains a temporary obstacle or impediment, and even if the engine is not running and the vehicle is not moving.

Under neither Connecticut nor Florida case law does an individual violate the statute at issue by merely sitting or sleeping in the driver's seat of a vehicle while intoxicated, and, under both statutes, the presence of a key in the ignition supports a finding of operation or actual physical control but is not a necessary requirement if other indicia of operation under § 14-227a (a) or actual physical control under Fla. Stat. Ann. § 316.193 (1) are present; rather, under both statutes, a court is required to look at all the relevant facts to determine if the fact finder reasonably could infer that the defendant was in a position to overcome a temporary obstacle to make the vehicle operative.

Argued September 9, 2022—officially released February 28, 2023

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of operating a motor vehicle while under the influence of intoxicating liquor or drugs and operating a motor vehicle while having an elevated blood alcohol content, and, in the second part, with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the first part of the information was tried to the jury before *Crawford, J.*; verdict of guilty; thereafter, the defendant was tried to the court, *Crawford, J.*, on the second part of the information; finding of guilty; judgment of guilty in accordance with the verdict and enhancing the defendant's sentence in accordance with the finding, from which the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Lavine* and *Alexander, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Joshua R. Goodbaum*, assigned counsel, for the appellant (defendant).

*Nathan J. Buchok*, deputy assistant state's attorney, with whom, on the brief, was *Maureen Platt*, state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. As one feature of Connecticut's public policy aimed at deterring drunken driving and punishing intoxicated drivers, General Statutes § 14-227a (g)[1] provides enhanced sentences for those convicted multiple times of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both. When a defendant's convictions all occur in Connecticut, applying this enhancement is straightforward. Applying the enhancement when a prior conviction occurred in a different state can present a greater challenge if that state's statutes define the crime of driving while intoxicated differently than Connecticut does under § 14-227a (a). The General Assembly has determined that a sentence enhancement under § 14-227a (g) should apply when the out-of-state conviction's "essential elements . . . are . . . substantially the same as subdivision (1) or (2) of" § 14-227a (a), which criminalizes "the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content." General Statutes § 14-227a (a).

This certified appeal requires that we determine whether, upon his conviction in this state for operating a motor vehicle while under the influence of intoxicating liquor or drugs, in violation of § 14-227a (a), the trial court properly enhanced the sentence of the defendant, Wayne A. King, based on his two prior convictions in Florida for driving under the influence in violation of Fla. Stat. Ann. § 316.193. The defendant appeals from the judgment of the Appellate Court, which upheld the trial court's judgment of conviction, rendered after a jury trial, of one count of violating § 14-227a (a). On appeal before this court, the defendant claims that the Appellate Court incorrectly concluded that the elements of Florida's driving under the influence statute, Fla. Stat. Ann. § 316.193, which he previously had been convicted of violating twice, were substantially the same as the elements of § 14-227a (a) for enhancement purposes under § 14-227a (g) because, he contends, the phrase "actual physical control" under § 316.193 (1) criminalizes a broader range of conduct than does the term "operating" under § 14-227a (a). To decide this question, we first must address an issue we have not confronted before: the meaning of the phrase in § 14-227a (g) that provides an enhancement for "any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section . . . ." We conclude that this phrase means that the basic and necessary parts of the out-of-state statute, including the actus reus, mens rea, and causation, must be the same as the elements of § 14-227a (a) to a considerable degree.

Applying this definition to the claim at issue, we conclude that the essential elements of § 14-227a (a) and § 316.193 are substantially the same. Accordingly, we affirm the Appellate Court's judgment.

I

The Appellate Court's opinion contains an accurate statement of the facts that the jury reasonably could have found, along with the relevant procedural history that informs our review of the defendant's claim. We summarize both briefly. "On April 1, 2016, the Naugatuck police pulled over the defendant's vehicle. The defendant smelled of alcohol, so the police transported him to the police station where [he] agreed to take a Breathalyzer test. The defendant's blood alcohol content registered at 0.1801 percent and then at 0.1785 percent, both of which [are] above the legal limit [of 0.08 percent]. The defendant thereafter was charged with a violation of § 14-227a (a) (1) and (2). Following a guilty verdict returned by the jury, the state proceeded on a part B information, which the defendant elected to have tried to the court, charging the defendant with being a third time offender, pursuant to § 14-227a (g), [based on] two prior convictions in the state of Florida. Despite the defendant's objections on various grounds, the court found that the state had established, beyond a reasonable doubt, that the defendant twice had been convicted of driving under the influence in Florida and that the essential elements of the Florida statute . . . were substantially the same as the essential elements of § 14-227a (a). Accordingly, the court sentenced the defendant to three years of imprisonment, execution suspended after eighteen months, twelve months of which [were] mandatory, followed by three years of probation." (Citation omitted; footnotes omitted.) *State* v. *King*, 204 Conn. App. 1, 4–5, 251 A.3d 79 (2021).

The defendant appealed to the Appellate Court, claiming that the trial court should not have sentenced him as a third time offender because the essential elements of operating under the influence in Connecticut are not substantially the same as in Florida.[2] Id., 3–4. The Appellate Court held that the two statutes were substantially the same and affirmed the defendant's conviction. Id., 13–24, 25. The defendant then petitioned for certification to appeal to this court, which we granted, limited to the issue of whether "the elements of the Florida offenses of which the defendant previously had been convicted were substantially the same as the elements of . . . § 14-227a (a) for enhancement purposes under § 14-227a (g) (3)?" *State* v. *King*, 336 Conn. 947, 947, 251 A.3d 78 (2021).

As he did in the Appellate Court, the defendant claims before this court that the elements of Fla. Stat. Ann. § 316.193 are not substantially the same as the elements of § 14-227a (a) because the use of the phrase "actual physical control" under § 316.193 (1) criminalizes broader

conduct than the term "operating" under § 14-227a (a). See footnote 8 of this opinion. He therefore argues that the trial court could not use his Florida convictions under § 316.193 to enhance his Connecticut sentence pursuant to § 14-227a (g) (3).

In support of this claim, the defendant argues that, for the essential elements of both statutes to be substantially the same, they must be "the same in substance" and that, under this definition, the element of "actual physical control" in Fla. Stat. Ann. § 316.193 (1) does not satisfy the requirements of § 14-227a (g). Specifically, he claims that, unlike the element of "operating" under § 14-227a (a), § 316.193 criminalizes the mere possibility of operation, including merely being seated in the vehicle's driver's seat while intoxicated. The state counters that the phrase "substantially the same" refers to the degree of similarity between the essential elements and that, under this definition, the elements of "actual physical control" in Florida and "operating" in Connecticut are substantially the same based on how our relevant case law has defined those phrases. We agree with the state.

The defendant's claim is premised on the proper meaning of the phrase contained in § 14-227a (g), "the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) . . . ." As the phrase "determined by the court" in § 14-227a (g) suggests, "[t]he issue of whether the elements of the [Florida] and Connecticut statutes under which the defendant was convicted [are] substantially the same [under § 14-227a (g)] calls for the comparison and interpretation of those statutes, which [also] is a question of law [subject to plenary review]." *State* v. *Commins*, 276 Conn. 503, 513, 886 A.2d 824 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). General Statutes § 1-2z guides our construction of § 14-227a (g), directing "us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150, 12 A.3d 948 (2011).

We conclude that the phrase in § 14-227a (g), "the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a)," means that the basic and necessary parts of the crime, including the actus reus, mens rea, and causation, must be the same to a considerable degree. Applying this definition to the elements of § 14-

227a (a) and Fla. Stat. Ann. § 316.193, we determine that the essential elements of these statutes are, in fact, substantially the same.

## II

Pursuant to § 14-227a (a), a "person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both" by "operat[ing] a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of [§ 14-227a], 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." Subsection (g) of § 14-227a provides penalties for a first offense as well as for a second, third, and subsequent offense within ten years after a prior conviction for the same offense. The final sentence of subsection (g) provides in relevant part: "For purposes of the imposition of penalties for a second or third and subsequent offense pursuant to this subsection . . . a conviction in any other state of any offense *the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section* . . . shall constitute a prior conviction for the same offense."[3] (Emphasis added.) General Statutes § 14-227a (g).

## A

### "Essential Elements" Defined

It is notable and important to our analysis that the legislature did not use only the word "elements" but modified it through the use of the adjective "essential." The statutory scheme does not, however, define either the word "essential" or the word "elements." Black's Law Dictionary defines "essential" as "[o]f, relating to, or involving the essence or intrinsic nature of something . . . [o]f the utmost importance; basic and necessary." Black's Law Dictionary (11th Ed. 2019) p. 687; see also Webster's New World Dictionary of the American Language (2d College Ed. 1972) pp. 478–79 ("[e]ssential" is defined as "of or constituting the intrinsic, fundamental nature of something; basic, inherent"). Additionally, Black's Law Dictionary defines "elements of crime" as "[t]he constituent parts of a crime . . . consisting of the actus reus, mens rea, and causation—that the prosecution must prove to sustain a conviction." Black's Law Dictionary, supra, p. 657. Thus, to determine whether a conviction in another state satisfies the requirements of § 14-227a (g), we first must determine the basic and necessary parts of the crime, including the actus reus, mens rea, and causation, under both Connecticut law and the law of the state of the prior conviction, in this case, Florida.

## B

### Essential Elements of § 14-227a (a)

The plain language of the first sentence of § 14-227a (a) makes clear that, to establish a violation of this statute, the state must prove that the defendant (1) operated (2) a motor vehicle, (3) while under the influence of intoxicating liquor or drugs or both. See Connecticut Criminal Jury Instructions 8.3-1, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited February 24, 2023). The second sentence of subsection (a), however, complicates the analysis of what constitutes the essential elements of this offense, listing two ways by which the state may prove a violation of the statute: (1) that the defendant was "under the influence of intoxicating liquor or any drug or both," or (2) that the defendant had "an elevated blood alcohol content . . . ." Arguably, these two subdivisions create additional, separate and essential elements, and thus two different crimes. The Appellate Court, however, consistently has interpreted these subdivisions as creating alternative ways of establishing the single element of "while under the influence of intoxicating liquor or any drug or both . . . ." "In other words, the two subdivisions provide for different methods of proof of the same offense . . . ." *State* v. *Re*, 111 Conn. App. 466, 473, 959 A.2d 1044 (2008), cert. denied, 290 Conn. 908, 964 A.2d 543 (2009); see *State* v. *Marcus H.*, 190 Conn. App. 332, 334–35 n.1, 210 A.3d 607, cert. denied, 332 Conn. 910, 211 A.3d 71, cert. denied, U.S. , 140 S. Ct. 540, 205 L. Ed. 2d 343 (2019); *State* v. *Lopez*, 177 Conn. App. 651, 668–69, 173 A.3d 485, cert. denied, 327 Conn. 989, 175 A.3d 563 (2017).

In reaching these holdings, the Appellate Court relied in large part on the relevant legislative history. See *State* v. *Re*, supra, 111 Conn. App. 472–73. We agree with the Appellate Court that the legislature intended these subdivisions to constitute alternative means of committing the element of "under the influence," and not separate, additional elements. Specifically, subdivisions (1) and (2) of subsection (a) were added to the statute in 1985. See Public Acts 1985, No. 85-596, § 1. Then Representative Richard Blumenthal explained that the purpose of creating the two subdivisions was "to establish two methods of proof. One method of proof is the conventional or traditional method which relies on evidence of behavior. The person couldn't walk straight, couldn't talk correctly, all the observational kind of evidence that would ordinarily be admitted at a trial. The second method of proof that we would establish is what is commonly and what would be called today the per se method which is essentially to rely on blood alcohol content." 28 H.R. Proc., Pt. 30, 1985 Sess., pp. 10,853–54. He further explained that, because the amendment created two ways of proving intoxication, a defendant could not be convicted under both subdivisions for the same conduct. Id., pp. 10,878–79, 10,882.

In other words, these subdivisions did not create two separate elements, and thus two separate crimes, but alternative means of establishing a single element of a single crime.

As a result, it is clear that subdivisions (1) and (2) of subsection (a) do not themselves constitute essential elements but, rather, are alternative means of establishing the essential element of "under the influence of intoxicating liquor or any drug or both . . . ." General Statutes § 14-227a (a). "[U]nder the influence" may be established either by the subjective standards of subdivision (1), or by the objective measure of blood alcohol content described in subdivision (2). Thus, we conclude that the essential elements of § 14-227a are that the defendant (1) operated (2) a motor vehicle, (3) while under the influence of intoxicating liquor or drugs or both.

C

Essential Elements of Fla. Stat. Ann. § 316.193

Fla. Stat. Ann. § 316.193 (1) provides: "A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and: (a) [t]he person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; (b) [t]he person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or (c) [t]he person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath." Florida courts have explained that the essential elements of § 316.193 are (1) a person driving or in actual physical control of (2) a vehicle, and (3) such person was under the influence of alcoholic beverages. See, e.g., *State* v. *Fitzgerald*, 63 So. 3d 75, 77 (Fla. App. 2011); *Tyner* v. *State*, 805 So. 2d 862, 865–66 (Fla. App. 2001), review denied, 817 So. 2d 852 (Fla. 2002); see also *In re Standard Jury Instructions in Criminal Cases—Report No. 2015-07*, 192 So. 3d 1190, 1192 (Fla. 2016) (appendix). Florida courts have explained that subdivisions (a), (b) and (c) of subsection (1) of § 316.193 create alternative means of establishing the element of "under the influence of alcoholic beverages"—(1) the person's normal faculties are impaired, or (2) the person has a blood or breath alcohol level of 0.08 or more. See *Tyner* v. *State*, supra, 865–66; see also Fla. Stat. Ann. § 316.193 (1); Fla. Standard Jury Instructions (Criminal) 28.3, available at https:/www.Floridabar.org/rules/florida-standard-jury-instructions/criminal-jury-instructions-home/criminal-jury-instructions/sji-criminal-chapter-28/ (last visited February 24, 2023). Thus, we conclude that the essential elements of § 316.193 are that the defendant (1) drove or actually physically controlled (2) a motor vehicle (3)

while under the influence of alcoholic beverages or chemical substances.

### III

Having identified the essential elements at issue, we must determine whether they are "substantially the same . . . ." General Statutes § 14-227a (g). Both parties agree that, by directing the court to determine whether the "essential elements" are "substantially the same," the legislature requires that the court look only at the elements of the offenses at issue, not the prior misconduct that led to the defendant's out-of-state convictions. The plain language of § 14-227a (g) (3) supports this reading. Specifically, subsection (g) is clear that the phrase "substantially the same" modifies the phrase "essential elements . . . ." General Statutes § 14-227a (g); see *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 16, 145 A.3d 851 (2016) (court may discern "plain meaning of statute on basis of 'grammatical structure of the statute' "). Specifically, the phrases "essential elements" and "substantially the same" are connected by the dependent, modifying phrase, "of which are determined by the court to be . . . ." General Statutes § 14-227a (g); see *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 189, 101 A.3d 200 (2014) (in interpreting phrase "for whom," court noted that this kind of qualifying phrase, "absent a contrary intention, refer[s] solely to the last antecedent in a sentence" (internal quotation marks omitted)).

Additionally, both parties agree that § 14-227a (g) does not require the essential elements to be entirely the same. By modifying the term "same" with the word "substantially," the legislature could not have intended for the essential elements to be exactly the same. See *State* v. *B.B.*, 300 Conn. 748, 757, 17 A.3d 30 (2011) ("no clause, sentence or word shall be superfluous, void or insignificant" (internal quotation marks omitted)). Thus, the critical inquiry is not whether a driving under the influence statute from another state contains exactly the same essential elements as § 14-227a. Rather, the relevant inquiry is whether the offense for which a defendant previously was convicted and sentenced includes substantially the same essential elements as an offense punishable under § 14-227a. To conduct this analysis, we first must determine the meaning of the phrase "substantially the same."

### A

#### "Substantially the Same" Defined

The parties disagree about how similar the legislature intended the essential elements of another state's statute must be to those of § 14-227a (a) to qualify a conviction under that out-of-state statute as a prior offense that makes a defendant eligible for enhanced punishment in this state. The defendant argues that the phrase

"substantially the same" means that the essential elements must be the same "in substance." In other words, he claims, the statutory language of the essential elements may vary between offenses, but the meaning of those elements must be the same. According to the defendant, the fact that the legislature did not use the term "similar" shows that it required more than mere similarity. The state counters that this phrase refers to the degree of similarity between the essential elements. Although we agree with the defendant that § 14-227a (g) requires more than mere similarity, we disagree that the legislature intended that the elements of a statute leading to a defendant's out-of-state conviction must be the same "in substance" to qualify the defendant for sentence enhancement. Rather, we agree with the state that this phrase refers to the degree of similarity between the statutes and requires that the statutory elements must be the same to a considerable degree. We note, though, that our rejection of the defendant's interpretation of this phrase does not mean that, in applying the proper definition, courts do not consider the "substance" of the elements. As we will explain, in determining if a sentencing enhancement applies, a court must consider the degree of similarity between the substantive elements.

The statutory scheme does not define the phrase "substantially the same," and, thus, we first turn to the ordinary meaning of these words, as evidenced in dictionaries and case law at the time the legislature added this language in 1999. See, e.g., *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 831, 251 A.3d 56 (2020); *Kuchta* v. *Arisian*, 329 Conn. 530, 537, 187 A.3d 408 (2018). Dictionary definitions of the terms "substantially" and "same" do not provide the necessary clarity.[4] Rather, based on common dictionary definitions of these words, the phrase "substantially the same" is subject to two possible interpretations: (1) the same in substance or (2) the same to a considerable degree.

Similarly, our case law does not provide clarity on this issue because Connecticut appellate courts never have defined the phrase "substantially the same" even though numerous statutes in this state contain the phrase, "the essential elements of which are substantially the same," or similar language. See, e.g., General Statutes § 17b-750 ("[n]o child care subsidy shall be paid to an unlicensed child care provider . . . convicted of any crime involving sexual assault of a minor or serious physical injury to a minor or any crime committed in any other state or jurisdiction *the essential elements of which are substantially the same* as such crimes" (emphasis added)); General Statutes § 38a-660 (n) (insurer or agent must notify Commissioner of Insurance upon learning that "surety bail bond agent has been arrested for, pleaded guilty or nolo contendere to, or been found guilty of, a disqualifying offense in

this state or an offense in any other state for which *the essential elements are substantially the same* as a disqualifying offense" (emphasis added)); General Statutes § 46b-59b (court shall not order visitation to parent convicted of murder under Connecticut statutes "or in any other jurisdiction, of any crime *the essential elements of which are substantially the same* as any of such crimes" (emphasis added)); General Statutes § 53a-40 (a) ("persistent dangerous felony offender" is defined as individual convicted of certain crimes and previously convicted of crimes enumerated in specific provisions of General Statutes, or "in any other state, any crimes *the essential elements of which are substantially the same* as any of the crimes" enumerated in General Statutes (emphasis added)); General Statutes § 54-56g (a) (1) (individuals ineligible for pretrial alcohol education program include persons convicted of certain violations of Connecticut statutes and persons "convicted in any other state at any time of an offense *the essential elements of which are substantially the same* as [those enumerated in Connecticut statutes]" (emphasis added)).

It is instructive, however, that this state's appellate courts never have interpreted the term "substantially" to mean "in substance," as that term is defined by the defendant in the present case. Rather, in other contexts, appellate courts consistently have defined "substantially" to mean to a considerable extent or degree. See, e.g., *State* v. *Salamon*, 287 Conn. 509, 571 n.52, 949 A.2d 1092 (2008) ("[a] substantial risk of physical injury means considerable risk of physical injury" (internal quotation marks omitted)); *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 358, 736 A.2d 824 (1999) (regarding phrase "substantially associated," "the word 'substantially' depicts the level of association required in order to create a franchise" (emphasis omitted)); *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 101 n.12, 491 A.2d 368 (1985) (regarding phrase "substantially certain," term "substantially" means "about, practically, nearly, almost, essentially" (internal quotation marks omitted)); *State* v. *Dubose*, 75 Conn. App. 163, 174–75, 815 A.2d 213 (noting that, in variety of circumstances, courts often define "substantial" to mean "considerable" (internal quotation marks omitted)), cert. denied, 263 Conn. 909, 819 A.2d 841 (2003); *Fisette* v. *DiPietro*, 28 Conn. App. 379, 384, 611 A.2d 417 (1992) ("the term 'substantial circulation' is relative" with term "substantial" meaning " 'considerable' or 'ample' ").

The Appellate Court's prior application of § 14-227a (g) is consistent with our previous definition of "substantially" in other contexts to mean "to a considerable or large degree." Although the Appellate Court never has explicitly defined the phrase "substantially the same," its application of the phrase has referred to the degree of similarity between the elements. Appellate Court case law does not support a construction of the

phrase "substantially the same" as meaning the "same in substance."

Specifically, in *State* v. *Young*, 186 Conn. App. 770, 201 A.3d 439, cert. denied, 330 Conn. 972, 200 A.3d 1151 (2019), in determining whether the essential elements of § 14-227a and those of Rhode Island's driving under the influence statute, R.I. Gen. Laws § 31-27-2 (2010), were substantially the same, the court first focused on the language of the statutes at issue, then on the case law interpreting that language. Id., 791–93. The court ultimately held that the essential elements of the statutes were substantially the same despite the differences in the language of the statutes. Id., 794 (considering whether out-of-state conduct would result in conviction in Connecticut). For example, the court noted that both statutes require as an element of proof that the defendant operated a "motor vehicle" but that each statute exempted different vehicles from its definition of the term. Id., 794–95. Despite this, the court held that, based on the similarities between the two states' definitions of the term "motor vehicle," these elements, overall, were substantially the same under both the Connecticut and Rhode Island statutes. Id., 795.

Nevertheless, in support of his interpretation of this language as meaning "same in substance," the defendant in the present case contends that the phrase "substantially the same" is a term of art in the double jeopardy context that the legislature was aware of when it added this language to § 14-227a in 1999. See Public Acts 1999, No. 99-255, § 1. According to the defendant, under our case law, a defendant's right against double jeopardy is violated if the elements of two crimes are "substantially the same," requiring the court to compare the elements of the two crimes at issue. He contends that, in the double jeopardy context, the "substantially the same" standard requires the elements to be the same in substance for the two charged crimes to constitute the same offense.

We disagree that double jeopardy case law is relevant to our interpretation of § 14-227a (g). Unlike § 14-227a (g), the double jeopardy clause of the fifth amendment to the federal constitution prohibits the conviction of a defendant twice "for the same offense," not substantially the same offense. See U.S. Const., amend. V. The well established test contained in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), applies when analyzing double jeopardy claims. See, e.g., *State* v. *Tinsley*, 340 Conn. 425, 432, 264 A.3d 560 (2021). Although it is true that this court has used the phrase "substantially the same" in relation to the applicable double jeopardy test, we did so for the first time in *State* v. *Goldson*, 178 Conn. 422, 425, 423 A.2d 114 (1979), with no citation indicating from where this language derived. The court in *Blockburger*, for example, never used the phrase "substantially the same." See

*Blockburger* v. *United States*, supra, 299. Importantly, neither has this court used this phrase in relation to a double jeopardy claim since its decision in *State* v. *Martin*, 187 Conn. 216, 223 n.6, 445 A.2d 585 (1982).

In our most recent double jeopardy decision, *State* v. *Tinsley*, supra, 340 Conn. 425, we did not use the phrase "substantially the same" but, rather, explained that the right against double jeopardy prohibits "multiple punishments for the same offense in a single trial." (Internal quotation marks omitted.) Id., 431. Our "[d]ouble jeopardy analysis in the context of a single trial is a [two step] process . . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. . . . At step two, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense . . . [and] the test to be applied to determine whether there are two offenses or only one . . . is whether each provision requires proof of a fact which the other does not." (Internal quotation marks omitted.) Id., 432. In other words, we look at whether the statutes have the same elements or whether each statute contains an element that the other does not. Id., 434, 445. Thus, although this court may have long ago in our double jeopardy case law used the phrase "substantially the same," the *Blockburger* test requires complete equivalency between the elements of the two statutes at issue, as our more recent case law has made clear. Section 14-227a (g) does not require such complete equivalency, as the defendant admits.

Moreover, although we have noted previously in this opinion that the dictionary definition of the phrase "substantially the same" has two possible definitions, only one is reasonable based on this statutory context. See, e.g., *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 171, 260 A.3d 464 (2021). If the term "substantially" means "in substance," the statute would require that the essential elements be the same in substance, which is another way of requiring the essential elements to be exactly the same, rendering the term "substantially" superfluous. The legislature, however, purposefully modified the term "same" by the term "substantially," and, thus, the defendant's interpretation of this phrase is not consistent with the statute as a whole. By contrast, if the term "substantially" is construed to mean "to a considerable degree," the statute would require that the basic and necessary parts of the crime—the actus reus, mens rea, and causation—be the same to a considerable degree. This definition of "substantially the same" does not render any term superfluous and, thus, is consistent with the statute as a whole. See, e.g., *State* v. *B.B.*, supra, 300 Conn. 757 (we read statute as whole "so as to reconcile all parts as far as possible" and "must construe [the statute] if possible, such that no clause,

sentence or word shall be superfluous, void or insignificant" (internal quotation marks omitted)). Thus, the phrase "substantially the same" clearly and unambiguously means that the essential elements—the actus reus, mens rea, and causation—must be the same to a considerable degree.

Even if there were ambiguity, the legislative history supports our interpretation of this phrase. Although this history contains no specific discussion of the definition of the phrase "substantially the same," there is extensive discussion about the purpose of the 1999 amendment adding this language to the statute. The purpose of this language was twofold: (1) to address the problem of repeat offenders, and (2) to eliminate a preexisting "loophole" permitting individuals convicted of driving under the influence in other states to be treated as first time offenders in Connecticut.[5] Although this history does not refer explicitly to the degree of similarity required by the term "substantially," legislators' concerns about closing the loophole to more accurately reflect a driver's history and to prevent those with convictions in other states from moving to Connecticut and receiving first time offender treatment when convicted here for operating under the influence support a broader interpretation of the phrase "substantially the same" than "the same in substance." This latter definition would significantly narrow the kind of out-of-state convictions that a court could consider in enhancing punishment for a later Connecticut conviction.

We recognize, however, that this definition does not provide ideal guidance to trial courts. Clearly, to be the same to a considerable degree requires more than mere similarity, but to what extent may essential elements differ but remain the same to a considerable degree? We believe New York case law is instructive on this issue. See, e.g., *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 171 (when meaning of statute is in doubt, reference to legislation in other jurisdictions pertaining to same subject matter may be helpful source of interpretative guidance).

Although not exactly on point, we find the court's analysis in *In re Johnston*, 75 N.Y.2d 403, 553 N.E.2d 566, 554 N.Y.S.2d 88 (1990), instructive regarding the proper analysis to undertake in determining if the essential elements are substantially the same. *In re Johnston* required that the court interpret N.Y. Judiciary Law § 90 (4) (a) (1983), providing for the automatic disbarment of an attorney convicted of a "felony," which, at that time, New York defined as any criminal offense classified as a felony under New York law or "any criminal offense committed in any other state, district, or territory of the United States and classified as a felony therein which if committed within [New York], would constitute a felony in [New York]." N.Y. Judiciary Law § 90 (4) (e) (1983). Although the statute at issue did

not use the phrase "substantially the same," as § 14-227a (g) (3) does, the New York Court of Appeals continuously has interpreted the statute as not requiring an out-of-state felony to be exactly the same as its New York counterpart but, rather, as requiring the two statutes to have "substantially the same elements." (Internal quotation marks omitted.) *In re Johnston*, supra, 405. Applying this standard, the court looked to the degree of similarity between the two statutes at issue. Id., 406–10. Specifically, the court analyzed the elements of vehicular manslaughter under New York law and involuntary manslaughter under Texas law, ultimately holding that the two statutes were not substantially the same. See id., 410. In reaching this conclusion, the court first recited the elements of both statutes, then considered relevant case law defining those elements. See id., 406–10. The court noted that "the New York standard for determining 'intoxication' is significantly higher than the standard in Texas" and that "[t]he Texas and New York felonies also differ significantly as to the culpable mental state required." Id., 409. The court reasoned that "the Texas statute focuse[d] entirely [on] the subjective tolerance of the individual in determining intoxication. The New York test, by contrast, is objective and measures the actor's ability to employ physical and mental faculties against that of a reasonable prudent driver." Id. Because of these differences, the court concluded that "conduct [that] would not be a felony in New York—causing a death by operating a motor vehicle while 'impaired' by the consumption of alcohol—would constitute a felony under the [relevant] Texas statute . . . ." Id. The court further noted that the fact that "both the Texas and the New York statutes are directed at the evil of drunken driving" did not render the statutes substantially the same. Id., 410. Rather, the analysis focused on the degree of similarity between the elements.

This standard is similar to the Appellate Court's application of the "substantially the same" standard in *State* v. *Young*, supra, 186 Conn. App. 770. Although the Appellate Court never explicitly defined the phrase at issue, in *Young*, it sought to explain the extent to which the essential elements must be the same to satisfy § 14-227a (g). Specifically, in *Young*, in determining whether the essential elements of § 14-227a and Rhode Island's driving under the influence statute, R.I. Gen. Laws § 31-27-2 (2010), were substantially the same, the court recognized that the statutory language varied regarding intent but held that these dissimilarities did not prevent the statutes from being substantially the same because § 31-27-2 "does not criminalize conduct that is less active or dangerous if performed while under the influence than that which Connecticut defines as operation." Id., 794. In other words, if the other state's statute is narrower than the Connecticut statute, the Appellate Court held, the essential elements of both statutes

would be substantially the same because the out-of-state conduct would constitute a conviction in Connecticut, even though Connecticut might criminalize a greater scope of conduct. For example, if another state's statute defines the element of "under the influence" as having a blood alcohol content of 0.10 percent or higher, then that state's statute would differ from how this state has defined this element. However, because this state criminalizes the operation of a motor vehicle with a blood alcohol content of 0.08 percent or higher, a conviction in that other state would fall within the scope of § 14-227a (a), even though that statute contains a broader definition of "under the influence."

The court in *Young* also recognized that the statutes at issue in that case varied in their definitions of "motor vehicle," with each statute exempting different kinds of vehicles,[6] but held that the definitions were substantially the same because "[b]oth statutes require that the motor vehicle be propelled by some force other than human power and . . . the overall effect of the definitions is to criminalize the operation of [motor] vehicles that could pose a danger to the public if operated while under the influence of liquor or drugs." *State* v. *Young*, supra, 186 Conn. App. 795. Thus, under *Young*, the elements of two statutes are substantially the same if (1) the elements of the other state's statute are either the same or narrower than the elements of the Connecticut statute, or (2) the elements of the other state's statute vary from the elements of the Connecticut statute but the elements, based on their definition under the statute or our case law, criminalize conduct that is the same to a considerable degree. The fact that the general purposes of the statutes are the same, however, is not sufficient to establish that the essential elements are substantially the same. Whether two essential elements are substantially the same must be determined on a case-by-case basis. Although there is no bright-line test, courts must determine the extent to which the elements differ from each other. Minor differences do not render § 14-227a (g) inapplicable if the statutes criminalize conduct that is the same to a considerable degree, regardless of the facts underlying the specific out-of-state conviction, which we are not allowed to consider under the statute's plain language.

B

Applying Definition of "Substantially the Same"
to "Essential Elements"

Applying this standard to § 14-227a, we note that the essential elements are that the defendant (1) operated (2) a motor vehicle[7] (3) while under the influence of intoxicating liquor or drugs or both.[8] The essential elements of the Florida statute, Fla. Stat. Ann. § 316.193 (1), are (1) a person driving[9] or in actual physical control of (2) a vehicle (3) and such person was under the influence of alcoholic beverages. Although it is true that

the wording of the first element of both of these statutes varies, as explained, it is not the wording of the statute alone that we consider but how the statute's elements have been interpreted under relevant case law. Thus, we must compare how this court has defined the term "operation" in relation to how Florida courts have defined the phrase "actual physical control." Cf. *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299–300, 118 A.3d 26 (2015) (in interpreting statutory language under § 1-2z, "[we] are bound by our previous judicial interpretations of the language and the purpose of the statute" and thus look to prior case law in determining clear and unambiguous meaning of statute (internal quotation marks omitted)). We ultimately conclude that the Appellate Court correctly determined that "the manner in which Florida courts have interpreted [the phrase] actual physical control is substantially the same as the manner in which [this court] has defined operation . . . ." *State* v. *King*, supra, 204 Conn. App. 18.

1

As the Appellate Court noted, this court consistently has defined "operation" as occurring "when *in the vehicle* [a person] intentionally does any act or makes use of any mechanical or electrical agency [that] alone or in sequence will set in motion the motive power of the vehicle." (Emphasis added; internal quotation marks omitted.) Id., 15; accord *State* v. *Cyr*, 291 Conn. 49, 57, 967 A.2d 32 (2009); see also *State* v. *Swift*, 125 Conn. 399, 403, 6 A.2d 359 (1939) ("[s]o if you find that the accused . . . manipulated the machinery of the motor for the purpose of putting the automobile into motion, the accused being in the car and in a position to control its movements, the accused would be guilty of operating a car under the influence of intoxicating liquor, whether the automobile moved or not" (internal quotation marks omitted)). In applying this definition, we have explained that "the term operating encompasses a broader range of conduct than does [the term] driving." (Internal quotation marks omitted.) *State* v. *Cyr*, supra, 57. For example, in *State* v. *Haight*, 279 Conn. 546, 903 A.2d 217 (2006), we held that the element of operation could be satisfied even "when a defendant had been seated in a vehicle that neither was in motion nor had its motor running." *State* v. *Cyr*, supra, 57, citing *State* v. *Haight*, supra, 552. Specifically, we held that the evidence was sufficient to sustain a prosecution under § 14-227a (a) when the defendant was found sleeping in the driver's seat of his parked vehicle, with the key in the ignition in either the "off" or the "accessory" position, and the headlights illuminated, but without the motor running. *State* v. *Haight*, supra, 547–48. We explained in *Haight*: "The act of inserting the key into the ignition and the act of turning the key within the ignition are preliminary to starting the vehicle's motor. Each act, in sequence with other steps, will set in motion the motive power of the vehicle." (Internal quotation marks omitted.) Id.,

553. Although inserting the key into the ignition does not turn the motor on, "[n]othing in our definition of 'operation' requires the vehicle to be in motion or its motor to be running." Id., 552. Thus, our case law clearly holds that a defendant's conduct constitutes operation if he or she places the key in the ignition.

We have never held, however, that inserting a key into the ignition is a prerequisite for a conviction under § 14-227a (a). In *State* v. *Cyr*, supra, 291 Conn. 49, the defendant had started his vehicle remotely while it was parked in a lot. Id., 52–53. The defendant then sat in the driver's seat but did not place the key in the ignition, which was necessary for him to drive the vehicle involved in that case. Id. At that point, a police officer approached and arrested him. Id., 51–52. The defendant appealed his conviction under § 14-227a (a) to the Appellate Court, which reversed the trial court's judgment, concluding that those facts did not establish probable cause to believe that he had been operating the vehicle within the meaning of § 14-227a (a). Id., 54. The state then appealed to this court, in which the defendant claimed that there was insufficient evidence that he had operated the vehicle. Id., 54–55. We disagreed, holding that he had "operat[ed]" his vehicle, as that term is defined under relevant case law, because, when he "start[ed] the engine of his vehicle remotely then [got] behind the steering wheel," he "clearly undertook the first act in a sequence of steps necessary to set in motion the motive power of a vehicle," even though he never inserted his key into the ignition. Id., 58. The fact that "more steps are necessary to engage the motive power of a vehicle that has been started by remote control than to engage the motive power of a vehicle not remotely started" did not mean that the defendant did not take the first step in the process of starting his motor vehicle. (Emphasis omitted.) Id., 59 n.12. Thus, we reversed the Appellate Court's judgment and ordered the trial court to affirm the conviction. Id., 62. In doing so, we explained that "the existence of a temporary obstacle or impediment will not preclude a finding of operation." Id., 60. Traditional examples of temporary obstacles or impediments include "vehicles that are stuck in ditches, snow or loose dirt, or hung up on some physical object . . . ." Id., 61. The court explained that a key that had not yet been inserted into the ignition is analogous to these situations because, "[l]ike a slippery surface or trapped wheels, the lack of an inserted ignition key is but a temporary impediment to the movement of a remotely started vehicle." Id. Thus, although the presence of a key in the ignition by itself is sufficient to constitute operation under § 14-227a (a), insertion of the key is not necessary for a defendant's conduct to constitute operation. Rather, the court must look to all the facts from which the fact finder reasonably could infer that the defendant undertook any act or made use of any mechanical or electrical agency that, alone or in

sequence with other steps, would have set in motion the motive power of the vehicle.

Our holdings in *Haight* and *Cyr* find support in the purpose of § 14-227a (a) as a "preventive [measure to] . . . deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers . . . and [enabling] the drunken driver to be apprehended before he strikes . . . ." (Emphasis omitted; internal quotation marks omitted.) Id. Thus, "the threat targeted by statutes disallowing not just driving, but also operating a motor vehicle while intoxicated—that is, the danger that a parked vehicle will be put in motion by an intoxicated occupant and thereby pose a risk to the safety of the occupant and others— remains present when the condition rendering the vehicle inoperable is a temporary one that quickly can be remedied. . . . Consequently, the existence of a temporary obstacle or impediment will not preclude a finding of operation." (Citation omitted; internal quotation marks omitted.) Id., 60. "By deterring intoxicated individuals from taking even the most preliminary steps toward driving their vehicles, our holding[s] [in these prior cases] further[ed] Connecticut's unambiguous policy . . . [of] ensuring that our highways are safe from the carnage associated with drunken drivers."[10] (Internal quotation marks omitted.) Id., 62.

In sum, Connecticut case law defines the term "operation" under § 14-227a (a) as any act that, alone or in sequence, will set in motion the motive power of the vehicle, even if there remains a temporary obstacle or impediment, and even if the engine is not running, while the defendant is in the vehicle. Under this definition, merely sitting in the driver's seat of a vehicle is insufficient to establish operation. However, although the insertion of a key in the ignition constitutes operation, this fact is not required to establish operation.

2

Florida courts define "actual physical control" pursuant to Fla. Stat. Ann. § 316.193 (1) to mean that "the defendant must be physically in [or on] the vehicle and have the capability to operate the vehicle, regardless of whether [he or she] is actually operating the vehicle at the time."[11] *In re Standard Jury Instructions in Criminal Cases—Report No. 2016-08*, 211 So. 3d 995, 998 (Fla. 2017) (appendix); see also *Hughes* v. *State*, 943 So. 2d 176, 195 (Fla. App. 2006) ("[a]ctual physical control is the present ability to operate, move, park, or direct whatever use or [nonuse] is to be made of the motor vehicle at the moment" (internal quotation marks omitted)), review denied, 959 So. 2d 716 (Fla. 2007). In determining whether the state has met "the capability to operate the vehicle" element of § 316.193 (1), Florida courts use a "reasonably capable of being rendered operable" standard. See, e.g., *Hughes* v. *State*, supra, 194. Florida case law applying this standard clarifies

that, for a defendant to be capable of operating a vehicle, there must be evidence that the defendant took some action from which the fact finder reasonably could infer that he or she placed himself or herself in a position of control of the motor vehicle at the moment of that action and thus could have started the motor at any time. See *Fieselman* v. *State*, 537 So. 2d 603, 606–607 (Fla. App. 1988) ("whether, from the evidence [of the defendant's actions] . . . a reasonable inference can be drawn that [the defendant], while intoxicated, [acted in a way that] placed [him] . . . at least at that moment in actual physical control of the vehicle while intoxicated"), aff'd, 566 So. 2d 768 (Fla. 1990); see id., 606 (there must be evidence from which "a legitimate inference [may] be drawn that [the] defendant had of his own choice placed himself behind the wheel" and either "started the motor" or did something to place himself in physical control of vehicle (internal quotation marks omitted)). Applying this standard, a court must consider the totality of the circumstances. See, e.g., *State* v. *Fitzgerald*, supra, 63 So. 3d 77. Moreover, like Connecticut's definition of "operation," Florida's standard is satisfied even if there remains a temporary obstacle or impediment to operability, and even if the engine is not running and the vehicle is not moving. See *Hughes* v. *State*, supra, 196; *Fieselman* v. *State*, supra, 607. As a result, Florida courts have explained that "physical control is meant to include situations [in which] an intoxicated individual is found in a parked car under circumstances [in which] the car, without too much difficulty, might again be started and become a source of danger to the driver, to others, or to property."[12] (Internal quotation marks omitted.) *Hughes* v. *State*, supra, 196.

It is clear under Florida case law, as in Connecticut, that an unconscious individual in the driver's seat, who has placed the key in the ignition, has placed himself in actual physical control of the vehicle. By placing the key in the ignition, he has taken some action to control the vehicle, and thus at any moment may take action to operate it. See *Fieselman* v. *State*, supra, 537 So. 2d 606–607 (trial court erred by dismissing charge that defendant was in actual physical control of vehicle while under influence when defendant was found lying down, asleep in front seat of automobile, with engine off but keys in ignition, and keys in ignition permitted inference that defendant could have started automobile and driven away at any time); *Griffin* v. *State*, 457 So. 2d 1070, 1071 (Fla. App. 1984) (defendant was in actual physical control of vehicle when he was found unconscious, slumped over steering wheel, key was in ignition and lights on, parked in traffic lane facing direction opposite from which traffic was to flow, but motor was not running); see also *Hughes* v. *State*, supra, 943 So. 2d 196 (defendants were in actual physical control when, "acting as pilot and copilot of [a] commercial aircraft

with over 100 passengers onboard, [and] while sitting in the cockpit of the aircraft and thus in actual physical control of the aircraft, performed extensive preflight duties for the purpose of flying the aircraft," including activating and checking systems prior to departure).

The defendant contends, however, that, because Fla. Stat. Ann. § 316.193, unlike § 14-227a (a), criminalizes the mere possibility of operation, a person may be found guilty of violating § 316.193 not only if he or she is found passed out behind the steering wheel of a vehicle with the keys in the ignition but also if he or she is found merely sitting or sleeping behind the steering wheel with the keys on the floor of the vehicle or in his or her hands. The defendant's argument ignores the Florida case law we have discussed, which requires that there be some evidence that the defendant had taken some action to place himself in control of the vehicle. Although it is true that, in a few Florida cases, courts have upheld convictions under § 316.193 even though the defendant never placed the keys in the vehicle's ignition, in these cases, the jury reasonably could have inferred from other evidence that the defendant had driven or been in actual physical control of the vehicle while intoxicated. See *State, Dept. of Highway Safety & Motor Vehicles* v. *Prue*, 701 So. 2d 637, 637–38 (Fla. App. 1997) (although court noted that keys were in position "near enough for [the defendant] to use them to start the vehicle and drive away," court first and foremost relied on fact that defendant was passed out in vehicle at 1:45 a.m. on shoulder of two lane highway with vehicle protruding approximately one foot into roadway and no other people or vehicles in area); *Baltrus* v. *State*, 571 So. 2d 75, 76 (Fla. App. 1990) (although fact that defendant was sitting behind steering wheel of motor vehicle may not be dispositive in determining actual physical control, this fact is one factor for court to consider); see also *State* v. *Fitzgerald*, supra, 63 So. 3d 76 (reversing dismissal of charge under § 316.193 when defendant was discovered sitting in driver's seat of vehicle, which was parked with engine off in intersection with headlights on and keys in her hand). Thus, the court in these cases did not hold that the defendant had violated § 316.193 by merely being asleep behind the steering wheel while intoxicated. Rather, the court looked at the totality of the circumstances to determine if the defendant had placed himself or herself in a position of control of the vehicle.

Importantly, in *Fieselman* v. *State*, supra, 537 So. 2d 606, the Florida court addressed whether a defendant may be deemed to be in actual physical control based solely on the fact that he was asleep in the vehicle without the engine on. Specifically, in *Fieselman*, the police discovered the defendant asleep in the front seat of his automobile, parked in a parking lot. Id., 604. The car's automatic gearshift was in the park position, the key in the ignition was in the off position, the lights

were on, and the engine was not running. Id., 604–605. Assessing these facts, the court explained that "sleeping in a prone position in the front seat of a vehicle parked in a parking lot, the engine of which is not running, is not itself sufficient to establish actual physical control of the vehicle"; id., 606; but that those facts combined with the presence of the key in the ignition allowed for the reasonable inference that the defendant was in actual physical control of the vehicle. Id., 607. By placing the key in the ignition, the defendant had placed himself in a position of control of the vehicle and could have, at any moment, started the vehicle and driven away. Id. The court noted, however, that, if the key had not been in the ignition, the case might have turned out differently. See id., 606. For example, if the defendant's vehicle had not been parked in a parking lot but instead had been parked in the travel portion of a public roadway, the fact finder could have reasonably inferred that the defendant had placed himself in actual physical control of the vehicle. Id. Nevertheless, the court explained at the end of its decision that the presence of a key in the ignition is not necessary to establish actual physical control but, rather, is one factor to consider. Id., 607. Thus, contrary to the defendant's argument, under Florida law, an individual is not in actual physical control of a vehicle by merely sitting or being asleep in the driver's seat of a vehicle while intoxicated. Rather, there must be evidence of some action that placed the defendant in control of the vehicle.

## 3

Although the Connecticut and Florida statutes use slightly different terminology, our comparison of the definitions of "operation" under § 14-227a (a) and "actual physical control" under Fla. Stat. Ann. § 316.193 leads us to conclude that the Appellate Court correctly determined that these elements are substantially the same. Specifically, Connecticut defines "operation" as an act that, alone or in sequence, will set in motion the motive power of the vehicle, even if there remains a temporary obstacle or impediment and even if the engine is not running and the vehicle is not moving. Florida defines "actual physical control" as being physically in the vehicle and having the capability to operate the vehicle, which, in turn, is defined as taking an action to control the vehicle, even if there remains a temporary obstacle or impediment and even if the engine is not running and the vehicle is not moving. It is clear under Florida's case law that taking an action to control the vehicle is equivalent, under Connecticut's case law, to taking an act that, alone or in sequence, will set in motion the motive power of the vehicle. Under neither Connecticut case law nor Florida case law does a defendant violate the statute at issue by merely sitting or sleeping in the driver's seat of a vehicle while intoxicated. Moreover, under both states' statutes, the presence of a key in the ignition supports a finding of

operation or actual physical control. However, under both statutes, as made clear by *Cyr* and *Fieselman*, the presence of a key in the ignition is not a necessary requirement if other indicia of operation under § 14-227a (a) or actual physical control under § 316.193 are present. Rather, under both states' statutes, the fact finder is required to consider all of the relevant facts to determine if it reasonably could infer that the defendant was in a position to overcome a temporary obstacle to make the vehicle operative. Accordingly, we hold that the element of "actual physical control" in § 316.193 is substantially the same as the element of "operation" in § 14-227a (a) and that the Appellate Court correctly concluded that the trial court had properly sentenced the defendant as a third time offender under § 14-227a (g).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] Although the legislature amended § 14-227a since the events at issue; see Public Acts, Spec. Sess., June, 2021, No. 21-1, §§ 116 and 117; Public Acts 2016, No. 16-126, § 3; those amendments have no bearing on this appeal. In the interest of simplicity, we refer to the current revision of the statute unless otherwise noted.

[2] Before the Appellate Court, the defendant generally claimed that his prior Florida convictions did not fall within the scope of § 14-227a (g) because the essential elements of those convictions were not substantially the same as the essential elements of § 14-227a (a), as that statute existed at the time of his arrests in Florida in 1999 and 2005. See *State* v. *King*, supra, 204 Conn. App. 5–6.

Under the version of § 14-227a (a) in effect at the time of the defendant's conduct in 1999, the legislature had limited the statute's scope by requiring that the operation of a motor vehicle occur "on a public highway" and defined intoxication to mean a blood alcohol content of 0.10 percent or higher. In 2002, prior to the defendant's conduct in 2005, the General Assembly reduced the required blood alcohol content from 0.10 percent to 0.08 percent. See Public Acts, Spec. Sess., May, 2002, No. 02-1, § 108. Thereafter, in 2006, the legislature eliminated the requirement in § 14-227a (a) that the operation of a motor vehicle occur "on a public highway . . . ." See Public Acts 2006, No. 06-147, § 1.

Based on the language of the Florida and Connecticut statutes in effect at the time of the defendant's conduct in 1999 and 2005, in addition to the arguments the defendant raised before this court, the defendant also claimed that the essential elements of the Florida and Connecticut statutes were not substantially the same in that (1) the "vehicle" element of the Florida statute was not substantially the same as the "motor vehicle" element in § 14-227a (a) because Florida did not require the vehicle at issue to be motorized whereas Connecticut did; *State* v. *King*, supra, 204 Conn. App. 20–21; (2) the element of Fla. Stat. Ann. § 316.193 (1) requiring that the conduct occur "within the state" was broader than the element in § 14-227a (a) requiring that the conduct occur " 'on a public highway' "; id., 23; and (3) the element of intoxication in the Florida statute was not substantially the same as the element of intoxication in § 14-227a (a) because Florida defined intoxication to mean a blood alcohol content of 0.08 percent or higher, whereas § 14-227a (a) defined intoxication to mean a blood alcohol content of 0.10 percent or higher. See id., 24. The defendant, however, made no claim that the essential elements of the current versions of § 14-227a (a) and § 316.193 are not substantially the same.

Additionally, the defendant claimed that *State* v. *Burns*, 236 Conn. 18, 670 A.2d 851 (1996), and *State* v. *Mattioli*, 210 Conn. 573, 556 A.2d 584 (1989), "should be overruled because those cases contravene the plain language of § 14-227a (g), which requires that a defendant's prior convictions, on which the enhanced penalty relies, occur less than ten years before the current Connecticut conviction." *State* v. *King*, supra, 204 Conn. App. 4. The Appellate Court, of course, was unable to overrule this court's decisions; id.; and the defendant did not seek certification to appeal to this court on that

ground. Thus, we do not address this argument.

[3] Regarding the increased penalties, under § 14-227a (g) (3), a third time offender shall "(A) be fined not less than two thousand dollars or more than eight thousand dollars, (B) be imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and sentenced to a period of probation . . . (C) have such person's motor vehicle operator's license or nonresident operating privilege permanently revoked upon such third offense . . . ."

[4] "Substantially" is defined as "in a substantial manner"; Webster's Third New International Dictionary (2002) p. 2280; or "[e]ssentially; without material qualification; in the main . . . in a substantial manner." Black's Law Dictionary (6th Ed. 1990) pp. 1428–29; see also *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) (regarding phrase "substantially limits" in Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., based on dictionary definitions, " 'substantially' suggests 'considerable' or 'specified to a large degree' "). "Substantial" is defined as "consisting of, relating to, sharing the nature of, or constituting substance" or "being of moment . . . important, essential . . . ." Webster's Third New International Dictionary, supra, p. 2280. Similarly, Black's Law Dictionary defines "substantial" as "1. Of, relating to, or involving substance; material . . . . 2. Real and not imaginary; having actual, not fictitious, existence . . . . 3. Important, essential, and material; of real worth and importance . . . . 8. Containing the essence of a thing; conveying the right idea even if not the exact details . . . ." Black's Law Dictionary (11th Ed. 2019) p. 1728.

[5] See 42 H.R. Proc., Pt. 19, 1999 Sess., p. 6718, remarks of Representative Paul R. Doyle ("we are, basically incorporating out of state convictions under our law to more properly reflect the driver's history"); id., pp. 6719–20, remarks of Representative William A. Hamzy ("[R]epeat offenders cause the second number, second highest number of accidents on our state's roads. . . . So what we try to do in this legislation is to address that problem and treat those people differently. . . . So I think the combination of the provisions that are included in this amendment address the problems that exist currently and I would urge the members of this [c]hamber to support it accordingly."); see also 42 S. Proc., Pt. 9, 1999 Sess., pp. 2928–29, remarks of Senator Catherine W. Cook ("[T]he problem with Connecticut's drunk[en] driving laws, has always been the loopholes. This amendment shuts the door tight on those loopholes that have been the bane of Connecticut's so-called strict drunk[en] driving laws. . . . This legislation sends that message, and imposes severe and appropriate penalties on those individuals who insist on endangering innocent people by drinking and driving."); Conn. Joint Standing Committee Hearings, Transportation, Pt. 2, 1999 Sess., p. 475, testimony of Deputy Commissioner Michael O'Connor of the Department of Motor Vehicles ("Another common sense or loophole that we looked at, was to take into consideration [Driving Under the Influence (DUI)] convictions in other states. Quite frankly, it doesn't make sense that if I have a DUI conviction in the state of New York, and now one in Connecticut, then I'm treated as having one conviction as opposed to an individual who has two in Connecticut is now treated as having two convictions."); Conn. Joint Standing Committee Hearings, supra, p. 566, testimony of Officer Mark Margolis of the North Haven Police Department ("Another problem we're finding in law enforcement is, we're finding people that have been arrested in other states. There's no tracking system, which again, the recommendations are looking to cover. We're having people on the street [who] are arrested in three or four different states. They just keep moving along. They just keep hurting people. They keep killing people. They move on to Connecticut and again, we get them and they just sit and they laugh in our face[s] because they know they're going to be offered the program. These recommendations, I think, will shore up some of those problems and correct them, and again, take people off the road that don't belong on the road.").

[6] Specifically, the court in *State* v. *Young*, supra, 186 Conn. App. 794–95, recognized that General Statutes (Rev. to 2019) § 14-1 (58) exempts "aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by persons with physical disabilities at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf-cart-type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors, farm implements, such vehicles as run only on rails or tracks, self-propelled snow plows, snow blowers and lawn

mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, motor-driven cycles as defined in section 14-286, special mobile equipment as defined in section 14-165, mini-motorcycles, as defined in section 14-289j, electric bicycles and any other vehicle not suitable for operation on a highway . . . ."

By contrast, Rhode Island law exempts "vehicles moved exclusively by human power, an [electric personal assistive mobility device] and electric motorized bicycles as defined in subsection (g) of this section, and motorized wheelchairs." R.I. Gen. Laws § 31-1-3 (s) (Supp. 2020); see *State* v. *Young*, supra, 186 Conn. App. 795. Thus, Connecticut's statute expressly excludes certain types of vehicles that Rhode Island's statute does not.

[7] The defendant also claims that the essential elements of the two statutes are not substantially the same because Connecticut's definition of "motor vehicle" is not the same as Florida's definition of "vehicle." Specifically, he argues that the phrase "motor vehicle" in § 14-227a (a) is defined as a vehicle operated on a public highway and thus includes vehicles only when they are used on a public highway. In contrast, he argues, the term "vehicle" in Fla. Stat. Ann. § 316.193 (1) is defined as a vehicle operated anywhere in the state of Florida and thus includes vehicles when they are not used on a public highway. In other words, he claims that the statutes' "motor vehicle" element differs regarding where the offense must occur—on a highway or not.

The defendant, however, not only did not raise this claim before the trial court or the Appellate Court, but he also explicitly conceded this claim at trial. Specifically, before both the trial court and the Appellate Court, the defendant claimed that the applicable version of § 14-227a (a) was the version in effect at the time of his Florida arrests and that, under this version, the essential elements were not substantially the same because Connecticut criminalized operating under the influence only on a public highway whereas Florida criminalized driving under the influence anywhere in the state of Florida. The Appellate Court rejected this claim on the ground that the applicable version of § 14-227a (a) was the current version, which no longer contains the limiting language, "on a public highway." *State* v. *King*, supra, 204 Conn. App. 24. The defendant never claimed, however, that, under the current version of § 14-227a (a), the essential elements are not substantially the same on the basis of where the conduct occurred. Rather, defense counsel stated on the record before the trial court that the current version of § 14-227a and Fla. Stat. Ann. § 316.193 are "essentially the same" regarding the location of the conduct.

Although, at times, we have reviewed unpreserved statutory interpretation claims because they involve pure issues of law; see, e.g., *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 167 n.4, 162 A.3d 706 (2017); the defendant not only failed to preserve this claim but also explicitly conceded the issue before the trial court. Under these circumstances, we see no reason to depart from our ordinary practice of declining to review such claims.

[8] The defendant does not argue that the element of "under the influence" is substantially different in the two statutes. Indeed, this element is not only substantially the same, but it is identical—each defines "under the influence" as an elevated blood alcohol content of 0.08 percent or higher.

Nevertheless, we note that the defendant argued in the Appellate Court that this element was not substantially the same. His argument, however, was premised on a prior version of § 14-227a (a), which had defined "under the influence" as an elevated blood alcohol content of 0.10 percent or higher. See General Statutes (Rev. to 1999) § 14-227a (a). The Appellate Court held that the proper statutory language to consider was the language of the current version of § 14-227a (a), and thus both statutes defined this element exactly the same. See *State* v. *King*, supra, 204 Conn. App. 24. On appeal before this court, the defendant does not seek review of this portion of the Appellate Court's holding. Thus, we need not determine whether, if the previous version of the statute applied, the element of "under the influence" would be substantially similar based on the different definitions of "under the influence."

[9] The defendant concedes that operating under § 14-227a includes driving, and thus that portion of Fla. Stat. Ann. § 316.193 (1) is the same.

[10] For these policy reasons, the Appellate Court has held that § 14-227a (a) does not require the defendant to have intended to move the motor vehicle. See, e.g., *State* v. *King*, supra, 204 Conn. App. 16. As that court has explained, to interpret the statute as containing an intent element would

frustrate the purpose of § 14-277a (a)—"to prevent the operation of motor vehicles by persons who, because of alcohol or drug intoxication, are deemed incapable of operating a vehicle responsibly"—because the fact "[t]hat a severely intoxicated person does not intend to move a motor vehicle the engine of which he has started provides no assurance that the vehicle will in fact remain stationary." (Emphasis omitted.) *State* v. *Ducatt*, 22 Conn. App. 88, 92, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990). Thus, in *State* v. *Marquis*, 24 Conn. App. 467, 589 A.2d 376 (1991), the Appellate Court determined that the defendant had been operating a motor vehicle when a police officer discovered him asleep in the front seat of his truck with his head resting on the steering wheel, the key in the ignition, and the engine running. See id., 468–69. The defendant argued that "he went to his truck to sleep and turned the key in the ignition solely for the purpose of running the heater to keep the cab warm. He [argued] that he did not intend to drive the truck and [was] not, therefore, culpable under the statute." Id., 468. The court explained that, consistent with the statute's purpose of criminalizing conduct that places a defendant in a "position that affects or could affect the vehicle's movement," intent was not an element of the statute. (Internal quotation marks omitted.) Id., 469.

[11] The use of the word "on" in the Florida Standard Jury Instructions 28.3, relating to violations under Fla. Stat. Ann. § 316.193, does not proscribe a broader range of conduct than does Connecticut by criminalizing an individual sitting on top of a motor vehicle—for instance, sitting on the roof or hood of the vehicle—while intoxicated. Rather, the use of the term "on" "pertains to vehicles such as motorcycles and bicycles." (Emphasis omitted.) *In re Standard Jury Instructions in Criminal Cases—Report No. 2015-07*, supra, 192 So. 3d 1192 (appendix). Thus, for cars, under both statutes, the defendant must have been physically inside the vehicle at issue.

[12] "The rationale for applying the reasonably capable of being rendered operable standard is due to the recognition that the law in this area is preventive in nature. Its purpose is to deter intoxicated individuals from getting into their vehicles, except as passengers, and enables law enforcement to apprehend an intoxicated driver before he strikes. In general, laws prohibiting driving while intoxicated are deemed remedial statutes, to be liberally interpreted in favor of the public interest and against the private interests of the drivers involved. . . . It is for these reasons that the courts in our state and in the states which have similar driving under the influence statutes . . . have held that physical control is meant to include situations [in which] an intoxicated individual is found in a parked car under circumstances [in which] the car, without too much difficulty, might again be started and become a source of danger to the driver, to others, or to property." (Citations omitted; internal quotation marks omitted.) *Hughes* v. *State*, supra, 943 So. 2d 196.